[Filed June 13, 1887.]

STATE OF OREGON, RESPONDENT, v. E. M. CLEMENTS, APPELLANT.

PRACTICE—CRIMINAL LAW—PREJUDICIAL REMARKS OF JUDGE AT THE TRIAL.— On the trial of a physician for manslaughter caused by producing an abortion, which resulted in the death of the mother, the State offered to prove by a witness who was a cook by occupation that the deceased was pregnant. It was objected that the witness was incompetent. The court in overruling the objection said: "Anybody can tell whether a woman is pregnant or not at times by her looks, from common observation. There is a great deal of humbug about medical science . . . . and medical testimony. . . . . There is many a man practicing medicine who ought to be second-class cook in a third-class hotel." *Held*, prejudicial to defendant, and ground for new trial.

MANSLAUGHTER BY ABORTION—BURDEN OF PROOF.—The burden of proof is on the State in such cases to prove that the abortion was not necessary to preserve the life of the mother. *Semble*, that this is especially the case where the accused is a practicing physician.

EVIDENCE.—Proof that the deceased said to witness the day before she died that "the doctor had used instruments upon her" is only hearsay evidence, and inadmissible.

BILL OF EXCEPTIONS.—In order to receive consideration in this court the bill of exceptions must contain a general statement of the proceedings, a statement of the exceptions as taken and allowed, and enough of the testimony bearing upon the point to make the same significant. Detached memoranda signed by and in the handwriting of the judge does not fill the requirements of the statute.

VERDICT—MOTION TO SET ASIDE.—The order of the trial court refusing to set aside the verdict of a jury will not be reviewed by the appellate court. The errors relied upon must be raised by appropriate exceptions interposed on the trial.

APPEAL from Baker County.

*Olmstead & Anderson,* and *J. P. Rand,* for Appellant.

The statement of deceased that the defendant had used instruments on her was inadmissible; not a dying declaration. (See *People* v. *Lee,* 17 Cal. 76; *People* v. *Vincent,* 24 Cal. 17; *State* v. *Garrand,* 5 Or. 216; *Vass* v. *Commonw.* 3 Leigh, 786; 24 Am. Dec. 695; *Anthony* v. *State,* Meigs, 265; 33 Am. Dec. 143; *Dunn* v. *State,* 2 Ark. 229; 35 Am. Dec. 54; *McDaniel* v. *State,* 8 Smedes & M. 401; 47 Am. Dec. 93; *The People* v. *Perry,* 8 Abb. Pr. N. S. 27; Wharton's Criminal Evidence, 281; 1 Greenleaf on Evidence, § 158.)

Not a part of the *res gestæ.* (See *Batton* v. *Watson,* 13 Ga. 63; *State* v. *Davidson,* 30 Vt. 377; *State* v. *Davis,* 56 N. Y. 95; *State* v. *Garrand,* 5 Or. 216; 1 Greenleaf on Evidence, § 110; Wharton's Criminal Evidence, § 296, and notes; *Insurance Co.* v. *Mosley,* 8 Wall. 397; *State* v. *Curtis,* 70 Mo. 694; *People* v. *McLaughlin,* 44 Cal. 435; *State.* v. *Daugherty,* 17 Nev. 376; *Sullivan* v. *O. R. & N. Co.* 12 Or. 395; Wharton on Homicide, § 262, and note; *State* v. *Rowles,* 65 N. C. 334.)

The language of the court in regard to many a man being a physician who ought to be a cook, etc., was ground for reversal. (*Andrews* v. *Ketchens,* 77 Ill. 377; *Furnam* v. *Huntsville,* 54 Ala. 263; *Hair* v. *Little,* 28 Ala. 236; *Reiger* v. *Davis,* 67 N. C. 185; *State* v. *Simmons,* 6 Jones, 121.)

The court erred in its instructions relating to the weight to be given defendant's testimony. The power of jurors to judge of the credibility of a witness is to be exercised according to law. (Code, 275; T. 9, ch. 9.)

It was not necessary for defendant to prove that the act com-

mitted was necessary to save the life of the mother. (1 Green-leaf on Evidence, § 35; *Commonw.* v. *McKie*, 1 Gray, 61; *Ogletree* v. *State*, 28 Ala. 693; 1 Bishop's Criminal Procedure, §§ 1050, 1051; Bennett & Hurd's Leading Cases, 356; *Commonw.* v. *Kimball*, 24 Pick. 366; *Morehead* v. *State*, 34 Ohio St. 212; *Otto* v. *State*, 7 Tex. 44; 29 Mo. 259.)

*M. D. Clifford*, and *Ramsey & Bingham*, for Respondent.

In the absence of a denial in the record, and there appearing to have been evidence not set out in the record, it is to be presumed that a proper foundation was laid for the admission of the declaration of deceased. (*Keating* v. *State*, 44 Ind. 450; *Parker* v. *Monteith*, 7 Or. 277; *State* v. *Ducker*, 8 Or. 394; *State* v. *Ah Lee*, 7 Or. 258.)

The declaration was admissible as a part of the *res gestœ*. (*Hunter* v. *State* 40 N. J. L. 495; *Lamport* v. *The People*, 29 Mich. 71; *Driscoll* v. *The People*, 47 Mich. 413; *Commonw.* v. *Pike*, 3 Cush. 81; Wharton's Criminal Evidence, § 263; 9 Rip. 289.)

It did not prejudice defendant, as he testified to the same fact.

THAYER, J.—The appellant herein was indicted, tried, and convicted, in the Circuit Court for the county of Baker, of the crime of manslaughter, alleged to have been committed by producing an abortion upon one Lena Dakota, from the effects of which she died on the thirty-first day of August, 1886, at Huntington, in said Baker County. The deceased was a young unmarried woman; had been stopping for some little time at the hotel at Huntington; was taken violently sick a few days before her death, and died evidently of hemorrhage from the *uterus*, caused by the recent expulsion of a *fœtus*. The appellant was a practicing physician at Huntington, and as such was treating the deceased at the time of her death. On the morning of her death he locked the door of her room, passed out from the hotel, and remarked to some one that she was sleeping quietly, and that he did not want her disturbed. A few hours afterwards, about 9 o'clock A. M., he came back to the hotel, called some one from the door

of her room, and stated that "Lena was dying." He was immediately arrested, placed in irons, and put in charge of the constable, and on his way from the hotel, stated to the constable in charge to come with him to his office; that he had something to show him. They proceeded to the prisoner's room, where he exhibited to the constable a *fœtus*, of which he said the deceased had been delivered. The appellant, at about the time the deceased was first taken ill, exhibited in the drug store to the druggist, a stout sharpened quill, about six inches in length, being bloody, and having the appearance of having been recently imbedded in living animal tissues, which he claimed to have taken from her room, and stated to the druggist: "I want you to examine this. I may need it for my protection. I am afraid this case will get me into a scrape yet. Some woman has been using this for a criminal purpose." A *post mortem* examination was held, and it was found that there was some abrasion of the interior walls of the *uterus*, or scratching, apparently caused by some rough instrument, but that the injuries were slight. In the room of the deceased were also found numerous drugs, some bearing marks of "druggist's prescriptions of Kansas, Mo.," others from druggists in Idaho Territory, and others prescribed by the appellant, the latter being only such prescriptions as would be used in ordinary obstetrical cases. There was no indication of deceased having met her death by abortion produced by the use of drugs.

John Williams (colored) was called and sworn on behalf of the State, and testified as follows: "Was in Huntington, August 31, 1886. Been there ever since. Was first cook in the hotel at Huntington. I knew the deceased while she was at the hotel. She died August 31st of this year. I last saw deceased alive on Monday before her death, about 4:30 o'clock. She was lying upon the floor. Appeared to be very sick. I had brought her some lemonade. Asked her what was the matter with her. I said to her, 'You are a very sick woman.' The boy was coming up with some ice-water. The door was open. She raised her head, and I asked her what was the matter. She said she was sick at her stomach. I says, 'Yes, Lena; you are a very

sick woman.' I picked her up, and laid her on the bed. Asked her if I had not better telegraph to Baker for a doctor. She said, 'No; Johnny would be in in the morning, and he could send to Wood River for a physician.'" He was then asked the following question by counsel for the State: "What did she say was the matter with her?" The witness in answer thereto said: "I asked her if the doctor had used instruments on her." The appellant's counsel thereupon duly objected to the witness answering the question. The court ruled that the question might be answered, if the State would connect the statement of the deceased with some act of the appellant with the commission of the crime. Subsequently said witness was recalled by the State, and asked the following question: "State what, if anything, she [referring to the deceased] said about having instruments used upon her [referring to the time mentioned in his former testimony]?" The appellant's counsel objected to the question as irrelevant, immaterial, and incompetent; that no foundation had been laid for introducing the same, either as a part of the *res gestæ*, or as a dying declaration. The court overruled the objection, to which an exception was allowed, and the witness answered: "I asked her if the doctor had used instruments upon her. She said, 'Yes.'" It appears, also, that appellant, during the time he attended on the deceased, misrepresented the cause of her illness.

This seems to be the substance, so far as I can gather from counsel's briefs, of the proof upon the part of the State.

The appellant was a witness in his own behalf, and testified that the deceased applied to him on the 12th of August, 1886, to perform an abortion on her; that he refused absolutely to do it, and gave his reasons. He also testified that some ten or twelve days prior to the death of the deceased she called upon him to treat her professionally, for some derangement of. the *uterus;* that he made an examination, found a sponge imbedded in the tissues in the mouth of the womb; that he used a metallic *speculum* and forceps, and removed the sponge; that he found the place occupied by the sponge lacerated, the sponge covered with pus, and very offensive; that he treated her

for about six days, and dismissed the case; that he saw nothing more of deceased until the 25th of August; that he was then called by her; that she complained of nausea of the stomach, and pains in the abdomen, and upon being questioned, denied having made any attempt of abortion; that symptoms rapidly disclosed themselves indicating labor pains; that he prescribed an anti-abortive treatment; that there were no other physicians in reach with whom to consult, and deceased had no means to employ medical assistance; that he continued such treatment; that deceased also informed him that she had made an attempt to accomplish a miscarriage by inserting a quill into the *uterus*, and told him where the quill could be found, and which was shown to be the same quill before referred to; that thereafter, on the night of the 30th of August, deceased gave birth to a dead *fœtus;* that for a considerable time prior to this the deceased was in such a condition that to have exposed the cause of her illness would have resulted in a nervous shock extremely dangerous to her life; that appellant removed the *fœtus,* and its appendages, and afterwards surrendered them to the officer, as shown on the part of the State; that he administered opiates to the deceased, placed her in bed for the purpose of her securing repose, gave directions that she should not be disturbed, left the hotel, and went to his breakfast. Upon his return, in about an hour afterwards, found her dying, uterine hemorrhage having set in during his absence, and caused her death.

The appellant assigns a number of grounds of error, which counsel have discussed fully. They relate to the insufficiency of the indictment, the introduction of improper testimony at the trial, misconduct of the judge in making an improper remark during the trial prejudicial to the appellant, in giving improper instructions to the jury, and in refusing instructions asked by the appellant's counsel, in denying the appellant's motion to set aside the verdict, and in refusing testimony offered by appellant's counsel at the trial.

The one relating to the insufficiency of the indictment was passed over at the hearing without argument; and the one deny-

ing the motion to set aside the verdict we cannot consider upon this appeal.

*Motion to set aside the verdict.* This court long ago held that a matter of that character is not reviewable. Counsel, however, continue, from time to time, to persist in urging such questions upon the consideration of this court, and seem to think that, unless they are able to raise them, judgments are liable to be given without sufficient evidence in law to sustain them. But such results are not liable to follow if counsel will properly present them. This court will not uphold a judgment where the evidence is not sufficient in law to justify its rendition, if the question is properly made, which can be done by a motion at the trial to discharge the defendant upon that particular ground, and including all the evidence in the bill of exceptions tending to establish his guilt. So, also, a question regarding the sufficiency of the proof of a particular fact in the case may be reviewed here; but it must be raised by an exception at the trial. Should the trial court say to the jury that if they found such and such facts, and there was no sufficient evidence in law to authorize such finding of all or any one of the facts thus submitted, an exception in either case could be saved, and made available. All the evidence, however, would have to be certified to this court, bearing upon the same, in the statement of the exception; and the statement in such case must purport to contain all the evidence upon the point. This court has nothing to do with the rulings of the lower court upon a motion for a new trial, or to set aside the verdict of the jury. It deals only with questions of law, and they must be squarely presented as such.

In the shape the evidence in this case is, we cannot determine its sufficiency. I have only attempted to set out the appellant's testimony from what appears in his brief. That is doubtless stated as favorably to him as the facts will permit, and yet I would not undertake to decide therefrom that he was not guilty as charged in the indictment, though he may have been entirely innocent. Very much would depend upon the character and standing, in such a case, of the accused. There appears to have been no improper motive upon the part of the

appellant to produce an abortion upon Lena Dakota, unless it were actuated by sympathy for that unfortunate girl. Her anxiety to cover up her shame would be likely to have had an influence upon any one possessed of a sympathetic nature. She had been imprudent, but was not outside of the pale of charity, and yet could not hope for it in the eyes of mankind, especially in those of her own sex. But whether the appellant was guilty or not, no one can determine so well as those acquainted with the surroundings. It would be idle for this court to attempt to speculate upon this question. The verdict of the jury must therefore stand, unless error was committed at the trial.

*Improper remark of judge at the trial constituting error.* The remark of the judge at the trial, claimed to have been prejudicial to the appellant, was made in a ruling upon an objection to a question to the witness Williams. Counsel for the State asked the witness, concerning the deceased, whether she was in a family way. The appellant's counsel objected to it, upon the grounds that the witness was not competent to give an opinion; that it did not appear that he possessed any scientific knowledge; that he was only a second cook at the Pacific Hotel. The court overruled the objection, and in doing so made use of the following language: "Anybody is competent to tell whether a woman is pregnant or not, at certain stages and times, by her looks, from common observation. There is a great deal of humbug about medical science, and medical experts, and medical testimony, and so-called medical scientific opinion. There is no other profession where there is such a difference, or where such testimony is unsettled and unsatisfactory as medical experts, and there is many a man practicing medicine who ought to be 'second-class cook' in a third-class hotel."

The remark evidently was an honest expression of the judge's opinion upon the question, and, as a general proposition, may have the sanction of many of the legal profession; yet it was unfortunate that the learned judge made it under the circumstances. The last sentence, "there is many a man practicing medicine who ought to be 'second-class cook' in a third-class hotel," was particularly calculated to prejudice the appellant in

the minds of the jury. It could hardly have failed to turn their attention directly towards him, and suggest to them the thought, at least, that he belonged to the class the judge alluded to. The latter, I am satisfied, had no intention whatever to convey any such impression. It was a hasty, inconsiderate remark, however, and should not have been made. If there is any one virtue in the judicial mind entitled to superior excellence, it is patience to hear and determine matters involving the rights and liberties of those charged with the commission of a crime. It is the highest aim of the courts to insure parties arraigned at the bar of justice a fair and impartial trial, and to avoid the least semblance indicating that the prosecution is maintained through a spirit of vindictiveness. The Supreme Court of the United States has ever sedulously guarded against any appearance of passion or impatience in its administration of the law. If such a course is the best and wisest for an appellate court to pursue, how much more important is it that a *nisi prius* court should observe it. The latter is often convened to try cases of highly sensational character, in the vicinity of where they arise, and in which the tone and sentiment of the community are inflamed by excitement and prejudice. Hence the least encouragement upon the part of the presiding judge would pervert the affair from an investigation to ascertain truth into a scene of persecution. The remark may have had no injurious effect in the case under consideration; but the matter is too serious to be passed over without an expression of disapprobation. I do not think that the question put to the witness was necessarily improper, nor do I find that the witness attempted to answer it; and if the court, after ascertaining that he had sufficient knowledge to answer it, had quietly overruled the objection, there would have been nothing upon that point of which the appellant could have complained, but in the shape it comes here we can do no less than reverse the judgment of conviction.

The other assignments of error might be passed over without further notice, were it not that the case has to be sent back for a new trial.

*Bill of exceptions.* The counsel for the State contended at the

hearing that there was no such bill of exceptions in the transcript as would admit of any examination by this court of many of the questions which the appellant's counsel brought forward, and from what I have seen of the record I am inclined to believe that he is correct. It is very doubtful, to say the least, whether the alleged instructions of the court to the jury, and the exceptions thereto, are authenticated in such manner as to entitle them to a consideration in an appellate court. The alleged instructions are on separate sheets from the bill of exceptions. They purport to be the instructions of the court to the jury, and are signed by the judge. But there is nothing to indicate the exceptions thereto, aside from a note upon the margin. The words " excepted to " are there written, and in many instances the name of the judge is appended to it. The practice, in regard to making up a bill of exceptions, ought to be thoroughly understood in this State. There has usually been but one course pursued regarding it ever since there has been an organized judiciary here; and that has been to make one general statement, reciting the general proceedings of the trial, a statement of the exceptions as they occurred, with sufficient of the evidence or other matter to explain them. That course must still be observed, unless changed by the legislature. It will not do for counsel to have transmitted here mere memoranda, in detached parts, of the proceedings had in a case, and expect that this court will consider the matter. Everything occurring in the trial of a lawsuit, from the time of the calling of the jury till the rendition of their verdict, upon which questions of law arise that are desired to be reviewed, should be embodied in one bill of exceptions. Exhibits have been allowed to be referred to in the bill, and copies thereof attached, but that has led to controversy in consequence of the exhibit having, as is alleged, been detached after the bill was signed. It is much the better practice, where it can be done, to set out all such matters in the bill itself, and that prevents any such consequences as referred to. Counsel, of course, should use judgment in making up a bill of exceptions, so as not to load it down with immaterial matter, or unnecessary portions of the testimony. A little judicious care

and discrimination and wholesome industry upon the part of counsel in this matter will save this court from a great deal of annoyance, and avoid a prejudice which an awkward, unwieldy performance is liable to incite.

The instructions given by the court to the jury in this case, as shown by the paper referred to, were very extensive and minute. I think it would be less liable to confuse a jury, in such a case, to submit to them simply the question as to whether the evidence adduced proved, beyond a reasonable doubt, that the accused was guilty of the offense charged in the indictment. He was charged with having done an act forbidden by section 513 of the Criminal Code of the State, which provides that "if any person shall administer, to any woman pregnant with a child, any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter." The gravamen of the offense is the employment of means, with intent thereby to destroy the child; that the death of the child or the mother is thereby produced; that the same is not necessary to preserve the life of the mother. The act then is manslaughter. It was necessary, therefore, for the State, in the present case, before it could claim a conviction of the appellant, to prove that said Lena Dakota was pregnant; that the appellant employed means with intent thereby to destroy the child with which she was pregnant; that the death of said Lena was thereby produced; and that the employment of the means to destroy the child was not necessary to preserve her life. The counsel for the State contended at the hearing that the *onus* is upon the accused, in such cases, to prove that 't was necessary to employ the means to destroy the child in order to save the life of the mother, after the State has proved the other facts referred to; that it involves a matter peculiarly within the knowledge of the accused; and that the averment of the fact will be taken as true, unless he disprove it. There are a class of cases where a rule of that character has been made applicable. It has

been applied in civil and criminal prosecutions, for a penalty for doing an act which the statute only permits to be done by persons duly licensed therefor. (1 Greenleaf on Evidence, § 79.) But I think it doubtful whether any such rule should obtain in such cases. I am unable to discover any principle to found it upon. The relative convenience of the parties to make the proof ought not, it seems to me, to be taken into consideration; but, in any event, no such rule should be applied to a criminal case, where the accused is presumed to be innocent, and the prosecution is required to prove him guilty beyond a reasonable doubt. In fact, I do not see how such a rule could obtain in such a case without overthrowing the two eternal principles of the common law just referred to. Proof that a physician, in his professional treatment of a woman pregnant with a child, had used means, with the intent thereby to destroy the child, and the death of the child was thereby produced, is not evidence that the treatment was not necessary to preserve the life of the mother; nor, if it produced the death of the mother, that it was not an honest effort on the part of the physician to preserve her life. The experience of mankind shows that cases have often arisen in which such treatment has necessarily been resorted to, and, in the absence of other proof, the law, in its benignity, would presume that it was performed in good faith, and for a legitimate purpose. The extent of proof, to establish the negative averment in such a case, would necessarily be limited by the circumstances. It could not, in the nature of things, be made positive, except as aided by the fact that the accused was able to refute it absolutely, if untrue, and had failed to attempt to do so.

In section 78 of 1 Greenleaf on Evidence, the author says: "So, in a prosecution for a penalty given by statute, if the statute, in describing the offense, contains negative matter, the count must contain such negative allegation, and it must be supported by *prima facie* proof. Such is the case in prosecutions for penalties given by statute for coursing deer in enclosed grounds, not having the consent of the owner; or for cutting trees on lands not the parties' own; or taking other property, not having the consent of the owner; or for selling, as a ped-

dler, goods not of the produce or manufacture of the country; or for neglecting to prove a will without just excuse made and accepted by the judge of the probate therefor. In these, and the like cases, it is obvious that plenary proof on the part of the affirmant can hardly be expected; and therefore it is considered sufficient if he offer such evidence as, in the absence of counter-testimony, would afford ground for presuming that the allegation is true."

It seems to me that, upon principle and authority, the accused, in such a case, has the right to stand upon his plea of " not guilty"; and that the prosecution is required to prove every charge in the indictment constituting the offense, including allegations of negative matter, before a conviction can properly be claimed.

*Statements of the deceased hearsay.* The testimony of the witness Williams, as to what the deceased told him about the doctor having used instruments upon her, was mere hearsay, was clearly inadmissible, and the court should have excluded it at once.

*The defendant a witness.* The attention of the court was directed at the hearing to the instructions of the Circuit Court to the jury, regarding the effect to be given to the testimony of the appellant. We should not consider the point if the case were not going back for a new trial, and some question liable to arise thereon. Under the circumstances, we deem it a duty to suggest our view concerning the matter. The act of the legislative assembly of the State, passed in 1880, amending sections 166 and 167 of the Criminal Code, provides that a person charged or accused of a crime shall, as his own request, but not otherwise, be deemed a competent witness, the credit to be given to his testimony being left solely to the jury, under the instructions of the court. The point referred to involves the question as to what extent the court is authorized to instruct the jury under that provision of the statute. Section 835 of the Civil Code provides that the jury, subject to the control of the court, in the cases specified in that Code, are judges of the effect or value of evidence addressed to them, except where it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper

occasions. There are other provisions of the Civil Code which allow the credibility of a witness, who has an interest in the event of the suit, to be drawn in question. Section 699 of that Code, in connection with section 673 thereof, permits it. Section 165 of the Criminal Code provides that the law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in that Code. Taking these various sections together, the court is of the opinion that the Circuit Court in such a case is authorized to instruct on the matters, as far as applicable, referred to in section 835 of the Civil Code; also that the witness is presumed to speak the truth, but that such presumption may be overcome by the manner in which he testifies; by the character of his testimony; by evidence affecting his character or motive; by contradictory evidence; or by his having an interest in the event of the prosecution, the jury to be the exclusive judges of his credibility. The witness, being also the party accused, is not entitled to full credit; but the jury have no right, on that account, to arbitrarily disregard his evidence. The manner in which he testifies may be such as to impress every one with the belief of the truth of what he states. A case came under my own observation once where a party charged with the commission of an offense pleaded guilty to it, and upon being asked the usual preliminary question to his being sentenced, "what he had to say why the sentence of the law should not be pronounced upon him," etc., made such a candid, ingenious statement in response that the court declined to sentence him, and directed that his plea be withdrawn, and a plea of not guilty be entered, and he was subsequently acquitted upon the latter plea. In that case, however, the judge was a practical man, and would not subordinate his sense of justice and humanity to vain austerity; or believe that courts for the trial of criminal causes were organized only to convict the accused.

The judgment appealed from will be reversed, and the case remanded to the Circuit Court for a new trial.