[Decided April 19, 1893.]

## STATE v. FOOT YOU.

[S. C. 32 Pac. Rep. 1031; 33 Pac. Rep. 537.]

| | |
|---|---|
| 24 | 61 |
| a32 | 128 |
| 24 | 61[1] |
| f33 | 152 |
| 24 | 61 |
| f36 | 260 |
| 36 | 520 |
| 24 | 61] |
| 37 | 89] |
| 38 | 59] |
| 24 | 61 |
| 39 | 81] |
| 39 | 96] |
| 39 | 488] |
| 24 | 61] |
| 41 | 113] |
| 41 | 300] |
| 41 | 508] |
| 24 | 61] |
| 42 | 212] |
| 24 | 61 |
| 45 | 353 |
| 24 | 61 |
| f47 | 373 |
| f47 | 490 |

1. HOMICIDE — DYING DECLARATIONS — EVIDENCE.— On a trial for murder, declarations of the deceased as to the cause of his injury and the identity of the party who inflicted the fatal wound, shown to have been made under a sense of impending death, are admissible in evidence, although testified to in Chinese and translated into English by a sworn interpreter.

2. COMPETENCY AND CREDIBILITY OF DYING DECLARATIONS.— The competency of dying declarations is for the court; but, after they have been admitted, their weight and credibility are questions of fact for the jury. The facts that declarations made by the victim of a murder under sense of impending death, were the result of questions propounded by an attorney, the absence of cross-examination, the use of an interpreter, the presence of friends and prosecuting officers only, and that accused was unrepresented by counsel, are matters affecting merely the weight and credibility, and not the competency, of such declarations.

3. CRIMINAL EVIDENCE.— A conviction of murder will not be reversed because a pistol not connected with defendant was introduced in evidence, where it was admitted only on the understanding that it should be so connected, and was withdrawn from the jury on failure of the state to show such connection.

4. APPEAL — ERROR — BILL OF EXCEPTIONS.— It is an invariable rule in Oregon that no objection to the rulings or proceedings of the trial court in either civil or criminal cases will be considered on appeal unless there was an objection, a ruling thereon, and an exception, all properly incorporated into a bill of exceptions. *O'Kelly* v. *Territory*, 1 Or. 59; *State* v. *Abrams*, 11 Or. 172, approved and followed.

5. APPEAL — ERROR — PRACTICE.—The fact that the whole record of the trial is before the appellate court upon some particular assignment of error, does not authorize the court to examine such record to see whether any other errors or irregularities than those noted in the conduct of the trial can be found, which, if properly excepted to, would justify a reversal. *State* v. *Cody*, 18 Or. 506, overruled on this point.

6. MOTION FOR NEW TRIAL — DISCRETION OF COURT.—A motion to set aside a verdict, or to grant a new trial, because of insufficiency of the evidence, in both civil and criminal cases, is addressed to the sound discretion of the trial court, and its ruling thereon cannot be assigned as error on appeal. *State* v. *Mackey*, 12 Or. 154; *State* v. *Clemmens*, 15 Or. 237; *Beekman* v. *Hamlin*, 23 Or. 313, approved and followed; *State* v. *Olds*, 19 Or. 397, overruled on this point.

7. VERDICT — WEIGHT OF TESTIMONY.— The credibility of witnesses and the weight to be given to testimony are matters for the consideration of the jury, and when a verdict has been approved by the trial court, the appellate court will not review it merely on the weight of the testimony.

8. COMPETENCY OF DYING DECLARATIONS.—The test to be applied to dying declarations to determine their admissibility is whether the deceased, if living, would have been permitted to testify to the things contained in the declarations.

9. DYING DECLARATIONS — OPINION EVIDENCE.—A statement of a person shot, that he caught a glimpse, as he fell, of the person that shot him, and thinks he would know him if he saw him, followed by a statement on the following day, when the defendant was presented to him for identification, that he fully recognizes him as the one who shot him,—is not the expression of an opinion, and is admissible as a dying declaration.

Multnomah County: J. COREY FULLERTON, Judge.

*Rufus Mallory* ( *Cyrus A. Dolph, Chas. B. Bellinger,* and *Joseph Simon* on the brief), for Appellant.

*George E. Chamberlain,* attorney-general, *Wilson T. Hume,* district attorney, and *Alfred F. Sears* (*Henry E. McGinn,* and *Nathan D. Simon* on the brief), for Respondent.

MR. JUSTICE BEAN delivered the opinion of the court.

This is an appeal from a judgment of conviction of murder in the second degree, on an indictment charging the defendant with the crime of murder in the first degree, in shooting and killing one Ching Bo Qung on the thirteenth of April, 1892. The homicide occurred in a Chinese saloon in the city of Portland known as the "Temperance Saloon," in the back room of which was being conducted at the time a Chinese gambling game called "tan tan." That Ching Bo Qung was shot at the

time and place mentioned, and that he afterwards died of the wound then inflicted, was not disputed at the trial, but the principal controversy was as to whether defendant did the shooting. The claim for the state was that the deceased went to this saloon for the purpose of collecting some money he claimed to be due him on a lottery ticket, and, passing into the "tan" room, demanded the money of the defendant, who was conducting the game, but defendant refused to pay it, whereupon deceased said he would have the defendant arrested, or the house "pulled" if he did not pay, and turned to go out; that just as he reached the front door, defendant, who had followed, fired two shots at him, one of which took effect in the back, inflicting a wound of which he died in a short time. The defendant claimed that he was not present at the time of, and did not do, the shooting, but that it was done by one Lou Choy, who was in charge of the game, to prevent the deceased from stealing and carrying away money that did not belong to him; that at the time of the shooting the "tan" game was being conducted by Lou Choy and two other Chinamen, and there were three bags of money and some loose change upon the table; that while the game was being played the deceased entered the "tan" room, accompanied by three or four Chinamen, one of whom presented a pistol at the men in charge of the game, while the others rushed to the table and grabbed for the money, and deceased succeeded in getting one sack, which he started to carry away, when he was followed and shot by Lou Choy.

1. On the trial, to maintain the issues on the part of the state, the district attorney offered in evidence two statements written by Mr. Nate Simon, and signed by the deceased, purporting to be dying declarations by him of the circumstances attending the crime, and the identity of the person by whom it was committed. Before offering these papers, the state called witnesses who were present at

the time they were prepared and signed, who testified that the deceased, at the time the papers were signed by him, was under a sense of impending death, and had no hope of recovery; that the statements were made in Chinese, translated into English by a Chinese interpreter, reduced to writing by Mr. Simon, an attorney employed to assist in the prosecution, and then read and translated back to the deceased, who said they were correct, and signed them. The statements were then admitted in evidence, and read to the jury, against the objection and exception of the defendant. In view of the testimony, and the statements aforesaid, it can hardly be claimed that they were not made under a sense of impending death, and were incompetent on that account; but the contention for appellant seems to be that the circumstances under which they were made were such as to render them so completely unreliable as to be incompetent as evidence. It appears from the testimony that two or three days after the shooting, Mr. Lafferty, assistant district attorney, and Mr. Simon, special counsel employed to assist in the prosecution, accompanied by a Chinese interpreter, visited the deceased at the hospital where he had been taken for treatment, for the purpose of obtaining a statement from him; that in reply to questions propounded to him by Mr. Simon, through the interpreter, the deceased made a statement of the circumstances of the shooting and the identity of the party, which was translated into English by the interpreter, and reduced to writing by Mr. Simon, and then read by Mr. Simon to the interpreter, and by him translated in Chinese to the deceased, who said it was correct, and signed it. In this statement the deceased said he only caught a glimpse of the man who shot him, but thought he would be able to identify him. The following day the defendant was taken to the hospital for identification, and, in the presence of the same parties as on the previous day, and of the defendant, the deceased made and signed another statement,

in the same manner as the first, in which he said that he recognized the defendant as the person who was conducting the game at the time he went into the "tan" room, and who followed him and shot him in the back as he was about to pass through the front door. The person who acted as interpreter at the time both these declarations were made, was called as a witness on the trial, and testified that he correctly interpreted the questions propounded by Mr. Simon, and the answers of the deceased thereto, and also translated the statements, as reduced to writing by Mr. Simon, to the deceased, and that the deceased said they were correct; and Mr. Simon testified that he correctly reduced to writing the statements of the deceased, as interpreted to him, and correctly read them to the interpreter for the purpose of being translated to the deceased; so that it appears from the evidence that the statements as offered in evidence purported to be the dying declarations of the deceased. They were shown to have been made under a sense of impending death, and to be statements of the deceased as to the cause of his death and the identity of the party who inflicted the fatal wound, and were properly admitted in evidence: 1 Greenleaf on Evidence, § 161; *People* v. *Bemmerly,* 87 Cal. 117 (25 Pac. Rep. 266); *Commonwealth* v. *Haney,* 127 Mass. 455; *Turner* v. *State,* 89 Tenn. 547 (15 S. W. Rep. 838); *Jones* v. *State,* 71 Ind. 66; *State* v. *Kindle,* 47 Ohio St. 358 (24 N. E. Rep. 485).

2. The circumstances under which the declarations were made, the fact that they were the result of questions propounded by Mr. Simon, the absence of all cross-examination, the use of an interpreter, the fact that Mr. Lafferty saw proper to change interpreters, the presence only of friends and prosecuting officers, and of defendant being unrepresented by counsel, were all matters affecting the credibility and weight, and not the competency of the evidence, and were for the consideration of the jury:

Greenleaf on Evidence, §§ 159, 160; Kerr on Homicide, 415. The competency of dying declarations is a matter for the court to determine, but after they have been admitted, their weight and credibility become questions of fact for the jury, and they are entitled to such weight only as the jury may, under all the circumstances of the case, think proper to give them.

3. The next assignment of error is that one Gritz-macher, a policeman, being called as a witness, produced a pistol, two chambers of which were empty, which he testi-fied he found upstairs in the building in which the shoot-ing occurred, a short time thereafter. Objection was made to the admission of the pistol in evidence because it had in no way been connected with the defendant. The court seems to have admitted it, but at a subsequent stage of the trial withdrew it from the jury because of a failure to con-nect it with the defendant, and refused to allow it to be considered or used as evidence on the trial. No exception was taken to the ruling of the court in admitting the pistol in evidence, and it may be doubted whether the question as to its competency is properly before us, but, however that may be, it seems to have been admitted only with the understanding on the part of the court that the state would, at some subsequent stage of the trial, connect it with the defendant, and, having failed to do so, it was withdrawn. No error prejudicial to the defendant was committed: Smith v. Whitman, 6 Allen, 564; Pavey v. Burch, 3 Mo. 447 (26 Am. Dec. 682); Com. v. Shepherd, 6 Bin. 283 (6 Am Dec. 449); Beck v. Cole, 16 Wis. 99.

4. It is also urged that the admission of proof by the state of statements made by its witness Quong Toy out of court, inconsistent with his testimony as given on the trial, was error; but it nowhere appears in the record that any ob-jection was made, or exception taken, either to the admis-sion of the testimony, or to that of the witnesses who were called to contradict him. On the contrary, counsel for the

defense cross-examined the witness Quong Toy at great length, as well as the witnesses called to impeach him. We had supposed that if any one question has been settled in this state it is that this is an appellate tribunal, constituted for the purpose of revising and correcting errors of law committed by the trial court, when that court has acted, and the act claimed to be error is disclosed by the record, *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. Rep. 309); *State* v. *Tamler,* 19 Or. 528 (25 Pac. Rep. 71), and this we still think to be the law. If a party desires to raise a question in this court as to the competency of evidence offered in the trial court, or of any other supposed irregularity of that court, either of omission or commission, he must, at the time, make his objection, and thereby obtain a ruling of the court, and, if adverse, he must save an exception, and bring it here by a proper bill of exceptions. "It is very important," says Mr. Chief Justice SHAW, "that no objection to a verdict be brought before this court by an exception which was not in some form taken at the trial, especially in a case where there is ground to believe that if it had been brought to the attention of the judge and adverse counsel, it might have been avoided by an amendment, or by a more specific direction by the judge sustaining or overruling it. The party objecting would have the full benefit of his objection in matters of law, if well founded, either by a ruling in his favor, or by an allowance of the exception, and the rights of both parties be secure." There is no difference in this regard between the rule in criminal and civil cases. In either case we can only revise and correct errors in the rulings and proceedings of the trial court, legally excepted to, and, as Mr. Thompson says, "It is incumbent on the defendant in a criminal case, as it is on a party in a civil case, if he would avail himself on appeal of any irregularities committed on the trial of the case, to make his objection, and to save his exception at the time when the irregularity was commit-

ted": Thompson, Trials, § 700. As was very pertinently said by Chief Justice WILLIAMS, in the capital case of *O'Kelly* v. *Territory*, 1 Or. 59, "Prisoners in our courts are provided with counsel; confronted with the witnesses against them; allowed to except to all the court says or does upon trial. And it is no hardship to say that if they have any objection to the acts of the tribunal before which they are tried, they shall make these objections known to such tribunal, or forever after hold their peace." And in *State* v. *Abrams*, 11 Or. 172 (8 Pac. Rep. 327), which was an appeal from a conviction of murder in the second degree, Mr. Chief Justice WATSON, speaking for the court, says: "Several objections were made and exceptions saved at the trial by appellant's counsel, on the ground of remarks made by counsel for the prosecution to the jury upon matters not in evidence. Some of these remarks attributed to Mr. Dorris, were undoubtedly improper, and can hardly he condemned with too much severity. But, however reprehensible, there is one insuperable obstacle to their being considered here as ground for reversal. They involve no error of the court below. We have announced this principle before (*State* v. *Anderson*, 10 Or. 448), and we now lay it down as a rule to which there can be no exceptions, that no objection to proceedings in the court below can be heard in this court which is not based on alleged error in judicial action on the part of the lower court."

In *McKinney* v. *People*, 2 Gilman, 540 (43 Am. Dec. 65), which was also a capital case, the court says: "A prisoner on trial under our law has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error, on account of such irregularities. The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglect in proper time to insist on his rights, he waives them." This case was cited

with approval in *Graham* v. *People*, 115 Ill. 566 (4 N. E. Rep. 790). And in *People* v. *Guidici*, 100 N. Y. 503 (3 N. E. Rep. 493), and *People* v. *Buddensieck*, 103 N. Y. 487 (9 N. E. Rep. 44), one of which was a capital case, it was ruled by the Court of Appeals of New York that errors upon criminal trials can be made available only by exceptions duly taken at the trial. In the latter of these cases Mr. Justice DANFORTH uses this very appropriate language: "An exception is not alone for the benefit of the litigant; but it is required for the sake of justice and fair dealing, and in order, among other things, that the attention of the trial judge being called to the supposed error, he may, if he thinks proper, correct it before the jury are called upon to consider their verdict." Any other rule than the one indicated would not only be extremely inconvenient, but subversive of the soundest principles of justice, often resulting in reversals and new trials on grounds which have no connection with the merits, and which would not have been presented had the attention of the trial court been called to the matter at the proper time, and a ruling obtained. The defendant in our courts is always represented by counsel, presumably skilled in the law, active and vigilant in behalf of his client, and upon whom devolves the duty, under his oath, to see that the law is complied with in the conduct of the trial, so that his client may have a fair and impartial trial, and, to guard against any failure in this respect, ample provisions are made by which he may point out and reserve, by objection and exception, for consideration by this court, any action of the trial court supposed to be prejudicial to his client.

5. The fact that the whole record of the trial is before us, on some particular assignment of error, does not authorize or empower us to examine the record to see whether any other error or irregularity in the conduct of the trial can be found, which, if properly excepted to, would justify a reversal. "It is not error simply," says Chief Justice

WALDO, "but error legally excepted to, that constitutes ground for reversal": *Kearney* v. *Snodgrass,* 12 Or. 316 ( 7 Pac. Rep. 309). We have not overlooked the case of the *State* v. *Cody,* 18 Or. 506 (23 Pac. Rep. 891 and 24 Pac. Rep. 895 ); in which it was held by a majority of the court that a failure of the trial court to instruct the jury, in a criminal prosecution, where the offense charged necessarily included a lesser offense, that they could find the defendant guilty of the latter, was error of which the accused could take advantage on an appeal without any objection or exception being made or taken in the trial court. But the rule announced in that case is so at variance with the constant practice of this court from *O'Kelly* v. *Territory,* 1 Or. 59, to the present time, that it can no longer be regarded as authority, and must be considered as overruled.

6. The next assignment of error is in overruling the defendant's motion for a new trial on the ground of insufficiency of the evidence to justify the verdict. It has been the constant and uninterrupted practice of this court from *State* v. *Bowen,* 1 Or. 271, which was a capital case, to the present time,—with one exception, hereafter to be noted,—to hold that a motion to set aside a verdict, or for a new trial for insufficiency of the evidence, in either a criminal or a civil case, was addressed to the sound discretion of the trial court, and that its ruling thereon cannot be assigned as error in this court on appeal: *State* v. *Fitzhugh,* 2 Or. 227; *State* v. *Wilson,* 6 Or. 429; *State* v. *McDonald,* 8 Or. 113; *State* v. *Drake,* 11 Or. 396 (4 Pac. Rep. 1204 ); *State* v. *Becker,* 12 Or. 318 (7 Pac. Rep. 329); *State* v. *Clements,* 15 Or. 237 (14 Pac. Rep. 410); *Halbock* v. *Portland,* 8 Or. 29; *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. Rep. 309 ). In *State* v. *Mackey,* 12 Or. 154 (7 Pac. Rep. 309 ), which was an appeal from a conviction of murder in the first degree, LORD, J., says: "The bill of exceptions purports to contain, in substance, the whole testimony, and the first point suggested is the insufficiency of the evidence

to justify the verdict.    The alleged error applies to the
denial of the defendant's motion for a new trial.    There are
cases in which it has been held that a motion for a new trial
is addressed to the sound discretion of the court below, and
that the overruling of such a motion will not be reviewed
unless there is a plain abuse of such discretion.    This is
conceded, but it is earnestly and strenuously insisted that
the evidence is so manifestly insufficient, and particularly
as against the son, to sustain the verdict, that it falls
within the rule laid down in those cases which would
authorize the court to review and set aside the verdict.
But a different doctrine seems to have been held by this
court in *Hallock* v. *City of Portland*, 8 Or. 29.   PRIM, J., in
delivering the opinion of the court, said :  'As the motion
for a new trial was based wholly upon the insufficiency of
the evidence to justify the finding of fact, the granting of
the motion was a matter resting wholly in the discretion
of the court below, and cannot be reviewed on appeal':
Hilliard, New Trials, 7; *Pomeroy's Lessee* v. *Bank of Indiana*,
1 Wall. 597; *Pennsylvania M. Co.* v. *Brady*, 14 Mich. 260;
*Boykin* v. *Perry*, 4 Jones ( N. C.), 325.   It is true the evi-
dence against the defendant is wholly circumstantial; and
there can be no doubt but what that portion of it which
relates to the son is extremely slight upon which to found
a verdict, but the authorities cited indicate that such mat-
ter is not reviewable on appeal."    And in *State* v. *Clements*,
15 Or. 237 (14 Pac. Rep. 410), it is said by THAYER, J., that
"This court long ago held that a matter of that character
[motion to set aside the verdict] is not reviewable.   Coun-
sel, however, continue, from time to time, to persist in urg-
ing such questions upon the consideration of this court, and
seem to think that, unless they are able to raise them, judg-
ments are liable to be given without sufficient evidence in
law to sustain them.    But such results are not liable to fol-
low if counsel will properly present them.    This court will
not uphold a judgment where the evidence is not sufficient

in law to justify its rendition, if the question is properly made, which can be done by a motion at the trial to discharge the defendant upon that particular ground, and including all evidence in the bill of exceptions tending to establish his guilt. So, also, a question regarding the sufficiency of the proof of a particular fact in the case may be reviewed here, but it must be raised by an exception at the trial. Should the trial court say to the jury that if they found such and such facts, and there was no sufficient evidence in law to authorize such finding of all or any one of the facts thus submitted, an exception in either case could be saved, and made available. All the evidence, however, would have to be certified to this court, bearing upon the same in the statement of the exception; and the statement in such case must purport to contain all the evidence upon the point. This court has nothing to do with the rulings of the lower court upon a motion for a new trial, or to set aside the verdict of the jury. It deals only with questions of law, and they must be squarely presented as such."

The only doubt ever cast upon the soundness of this rule is the implication from the remarks of Chief Justice THAYER in *State* v. *Olds*, 19 Or. 397 (24 Pac. Rep. 394), in which he expresses his individual opinion that the overruling of a motion for a new trial, in a capital case, for insufficiency of the evidence, is assignable error on appeal. That case was, however, reversed on other grounds, and we think it can hardly be assumed that a majority of the court intended to overrule all the previous adjudications upon the subject, without even noticing or referring to them. The case has never been regarded as authority on this point. At the argument of *State* v. *Zorn*, 22 Or. 591 (30 Pac. Rep. 317), when the right to appeal from an order denying a motion for a new trial was raised and the case of the *State* v. *Olds* cited as authority, counsel was interrupted by the then Chief Justice, who stated that he took

that occasion to say that he did not concur in the intimation in that case that overruling a motion for a new trial was assignable error, but that he concurred in the result on other grounds, and counsel was requested to pass to other points in his case, and the court in its decision disregarded that question. The same point has been raised since in this court, and attended with the same result, the court adhering to the rule that its powers are appellate, and it can deal only with questions of law squarely presented as such. The granting of a new trial for the insufficiency of the evidence is not a matter of absolute right, but rests in the sound discretion of the trial court who hears the witnesses, notes their appearance upon the stand, and manner of testifying, is familiar with all the proceedings of the trial and the circumstances surrounding it, and is therefore better able to determine the question as to whether substantial justice will be done by either granting or denying a motion for a new trial than an appellate court can possibly be from merely reading the record.

7. But if, in view of the rule announced in *State* v. *Olds*, it is thought that counsel had a right to rely upon that case until overruled, we still think there is ample evidence in the record to sustain the verdict. Hem Long, a witness for the state, testified that, in company with the deceased, he went into the "tan" room, where the defendant and two other Chinamen were running the game, and the deceased requested the defendant to pay him a sum of money which he claimed was due on a lottery ticket, but the defendant refused to do so, whereupon some words passed between them, in the course of which deceased said he would have the defendant arrested, or the house "pulled" if the money was not paid. The witness then turned to go out, followed by the deceased, and just as he reached the street he heard two shots fired, and, on suddenly opening the door, saw the deceased fall and the defendant running into the back room. Chin Chuck, another witness,

testified that he was standing watching the game, when the deceased and the witness Hem Long came in and the deceased asked for money, which was refused by the defendant, when the witness left the room and went into the front room of the saloon, where he was at the time of the shooting; that soon after he left the "tan" room Hem Long and the deceased came out and started for the street, when the defendant, who was following, shot the deceased in the back. The evidence of these two witnesses is corroborated by the dying declaration of the deceased, which, in substance is, that he went into the saloon to demand money on a lottery ticket belonging to a friend, which being refused, he started to leave the building, but was followed and shot in the back by a man whom he identified as the defendant. This evidence, if believed by the jury, and of the weight of which they were the exclusive judges, was certainly sufficient to warrant the verdict, and, while it was directly and positively contradicted by the witnesses for the defense, this court will not disturb a verdict on what might appear to be the mere weight of evidence: *Skaggs* v. *State,* 108 Ind. 53 (8 N. E. Rep. 695); *Ritter* v. *State,* 111 Ind. 324; *Hudson* v. *The State,* 107 Ind. 371 (8 N. E. Rep. 273); *State* v. *Glahn,* 97 Mo. 679 (11 S. W. Rep. 260); *Sanders* v. *People,* 124 Ill. 218 (16 N. E. Rep. 81). The credibility of the witnesses, and the weight to be given to the testimony are all proper matters for the consideration of the jury, and, when the verdict has met with the approval of the trial court, as in this case, it will not be disturbed, even if the question was properly here on what we might suppose to be the mere weight of the testimony. As said by that eminent jurist, Mr. Justice DILLON, " We must assume that all the evidence in the case is true, and that the witnesses are all credible, for if there are questions relating to the credibility of witnesses, or if what the evidence proves depends upon the credibility of witnesses, or upon the proper deductions to be drawn from the evidence

— these are questions, not for the court, but for the jury, under the direction of the court." And further on in the same opinion, after referring to several decisions of the supreme court of the United States, holding the same doctrine, he says: "Where in any case it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from even undisputed facts; where different men equally sensible and equally impartial would make different inferences—such cases the law commits to the decision of the jury, under instructions from the court": *U. S.* v. *Babcock,* 3 Dillon, 577.

The judgment of the court below is therefore AFFIRMED.

[Decided June 19, 1893.]

ON REHEARING.

MR. JUSTICE BEAN delivered the opinion of the court.

8. A petition for rehearing has been filed in which it is claimed that the dying declarations of the deceased were inadmissible in evidence because, as argued, they contain merely his opinion as to who did the shooting. The rule is well settled that dying declarations must relate to such facts only as the deceased would have been competent to testify to if sworn as a witness in the case, and not to mere matters of opinion. The test is, whether, if living, the party making the declaration would have been permitted if called as a witness on the trial to have testified to those things contained in the declaration.

9. Applying this rule to the case at hand, the evidence was clearly competent. The first statement of the deceased was: "I was shot in the back and could not see the man that shot me, but I caught a glimpse of him as I fell, and I think that I would know him if I see him." On the following day, when the defendant was taken to the hospital for identification, the deceased after seeing him made another statement in which he said: "I recognize the

defendant Don Foot (Foot You) as the man whom I first spoke to when I went into the saloon. He is the stout man I refer to in my previous statement. I then turned and walked away and he shot me. I could see him as I fell; I fully recognize the man I just saw as the man whom I spoke to and who afterwards shot me." There is here no statement of an opinion as to who did the shooting. It is a positive, unqualified declaration of a fact to which deceased could have testified had he been living and called as a witness on the trial. The case of *People* v. *Wasson*, 65 Cal. 538, relied on in the support of the petition, is wholly unlike the case at bar. In that case the deceased did not see the defendant fire the shot, and did not pretend to know who it was that shot him, and his declaration was merely the expression of an opinion on the subject. Here the deceased saw the man who shot him and positively identified the defendant as the person who inflicted the fatal wound.

Petition denied. Judgment AFFIRMED.