## COMMONWEALTH *vs.* AUGUSTUS G. WESLEY.

Dukes County.    March 3, 1896. — May 25, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Burning a Building with intent to procure Insurance — Evidence — Admissions — Confession — Variance.*

At the trial of an indictment for burning a building in the middle of November, testimony that, during the preceding summer, the building was used as a summer hotel, is admissible as descriptive of the building, and is not too remote.

At the trial of an indictment for burning a building with intent to injure certain insurance companies, conversations between the defendant and an insurance agent a short time before the fire, with respect to renewals of policies and an increase of insurance on the building burned, are competent as tending to show the ownership of the defendant.

At the trial of an indictment for burning a building, the property of the defendant, evidence that the land on which the building stood was owned by a third person who collected rent from the defendant for the use of the land, but who exercised no ownership or control over the building, justifies an inference that the building was personal property.

Admissions of the ownership of property are competent as against the owner, even though he may have acquired title by deed.

At the trial of an indictment for burning a building, the written confessions of the defendant and statements in the nature of confessions made to the State fire marshal are competent, where it appears that such confessions and statements were made voluntarily and not under threat, duress, or in consequence of any inducement, and that the defendant, though a witness at the fire inquest, was not summoned or compelled to testify, and was warned that he was not obliged to criminate himself.

A written confession is not rendered inadmissible by reason of being signed and sworn to by the defendant.

At the trial of an indictment for burning a building, the property of the defendant, proof that the building, which is owned by the defendant, stands on land owned by a third person, does not constitute such a variance as will justify a verdict for the defendant.

INDICTMENT, for burning a building at Cottage City, the property of the defendant, with intent to injure certain insurance companies. The fire was alleged to have occurred on November 13, 1894.

At the trial in the Superior Court, before *Braley,* J., one Howland, called as a witness by the prosecution, testified that during the preceding summer the building alleged to have been burned had been occupied as a summer hotel. In support of

the allegation of ownership, the same witness further testified that he was an insurance agent, and that the defendant came to him in relation to the insurance on the Wesley House; that the defendant took out policies on the house, which were given to him and paid for by him; that the witness was collector of taxes in Cottage City in 1893, and collected the taxes on the Wesley House from the defendant.

One Eldridge, also an insurance agent, called for the prosecution, testified that the defendant came to his office and asked him to write a mortgage running to one Gonier on the Wesley House for an amount which he named. "Then he asked me how much insurance he had on the Wesley House, and I told him he had $10,000. He said that was not enough to apply any part of it to the mortgage, and I agreed with him; and he told me to write the mortgage, and to write $3,000 additional to cover the mortgage, which I told him I would do." The witness further testified that the conversation took place about a week before the fire; that at the time the policies were issued by the companies named in the indictment he asked the defendant about his renewals, and the defendant asked him how much insurance he had in force; that the witness told him $7,000, and the defendant authorized him to renew for $10,000; that he delivered the policy to the defendant about the 1st of September, and went for it again on the 19th of November, at which time the defendant said that he had paid the insurance people a good deal of money first and last, and he thought that, if his property should burn, the money would come out of a great many companies, none of which would feel it severely, and that he could build a new house and help the place.

A director of the Camp Meeting Association testified that the association owned the land on which the Wesley House stood, and had collected rent for its use, but did not own the house itself, and had never exercised any ownership or control over it.

The State fire marshal, called as a witness for the prosecution, testified, subject to the exception of the defendant, that he went to Cottage City on November 15, 1894, to investigate the cause of the fire; that he sent for the defendant, and disclosed to him that he was the fire marshal, but did not state to him that he had authority to arrest him or use the word "arrest"; that he did

not charge the defendant with setting the fire, or say that he had better confess, or exercise any authority or direction over the defendant's movements ; and that nothing was said as to the defendant having counsel. After putting the defendant under oath, the witness warned him that he might refuse to answer any questions tending to criminate him, and then proceeded with the examination, saying nothing as to his reason for putting the defendant under oath or as to any later use of the testimony, but stating to the defendant that he came there to hold an inquest as to the cause of the fire, and, as fire marshal, he should be obliged to put him under oath ; that the defendant, in answer to a question of the witness, stated that he was the owner of the Wesley House ; that on the following day the witness further examined the defendant at a public hearing, and soon after the public hearing closed had a private conversation with him, when he was not under oath, in which the defendant made a confession, which was reduced to writing ; that the witness said, " Mr. Wesley, I want to have a talk with you about this matter alone, and you will understand that you are not under oath," but gave him no further explanation ; that he did not exercise any control over the defendant or say that he ought to stay, but the defendant might have gone if he had so chosen. The witness then testified, subject to the exception of the defendant, that the defendant then said to him : " On the evening of the 13th of November, I went from prayer meeting to the Wesley House about 8.30, and I entered the hotel ; there I saturated a piece of burlap with kerosene, placed it about a cigar box in which I placed a candle, lighted it, placed it under the stairs in the second story, and then went away." The defendant further stated that he did so for the purpose of collecting the insurance money. After the fire marshal had written a statement, and, in the presence of witnesses, had read it to the defendant, the latter read it, signed it, and made oath to it. The statement was as follows :

" Island House, Eugene Hayden, Prop.

" Cottage City, Mass., Nov. 16, 1894.

" I, Augustus G. Wesley, of Cottage City in the Commonwealth of Massachusetts, hereby make the following voluntary statement of my own free will and accord without hope or expectation of favor by reason of my so doing, viz. : Tuesday eve,

November 13th, 1894, I went from prayer meeting at the Methodist church in Cottage City to the Wesley hotel owned by me. I entered the hotel about half past eight. I saturated some burlap in the closet under the stairs on the second floor with kerosene and wrapped it around a cigar box in which I placed a lighted candle. I did this for the purpose of setting fire to the building and contents in order to collect the insurance on them.

" A. G. Wesley."

The defendant further stated to the fire marshal that his reason for setting the fire was that there had been a number of incendiary fires in the town, and as it was reported that the insurance companies would cancel all the policies in the place, and as his property was bound to go any way, it would be as well to have it go while his policies were in force and while he could collect the insurance.

A witness for the prosecution testified that, on the day of the defendant's confession, he heard him say that he " set his own house afire," and that the defendant on another occasion said to the witness that he was guilty of setting his own house on fire. There was evidence that the defendant occupied the house in winter with his family, and other evidence of ownership. The defendant introduced in evidence the records of deeds, showing that, at the time of the fire, the legal title to the land on which the Wesley House stood was in the Martha's Vineyard Camp Meeting Association ; but the prosecution did not contend that the defendant had any title to such land.

At the close of the evidence the defendant requested the judge to direct the jury to return a verdict of not guilty by reason of the failure of the prosecution to prove the ownership of the property as alleged. The judge declined so to rule ; and the defendant excepted.

The case was submitted to the jury with full and proper instructions, which were not excepted to, and the jury returned a verdict of guilty ; and the defendant alleged exceptions.

*R. W. Nason & W. A. Morse*, for the defendant.

*A. J. Jennings*, District Attorney, for the Commonwealth.

MORTON, J.   1. The testimony of Howland that the building had been occupied as a summer hotel during the preceding summer was admissible to describe and identify the building.   It was not too remote

2. The testimony of Eldridge as to his conversation with the defendant respecting insurance on the building was admissible as tending to show that the defendant owned it. There was evidence from which the jury could infer that the building was personal property. If it was, the title could pass without deed or writing of any kind, and could be shown by parol. Even if the title was by deed, admissions by the defendant of ownership were competent against him. *Smith* v. *Palmer*, 6 Cush. 513. *Kellenberger* v. *Sturtevant*, 7 Cush. 465.

3. The written confession of the defendant and the statements in the nature of confessions made by him to the fire marshal and others were properly admitted. Their weight was for the jury, and in view of the statements contained in the exceptions, that "the case was submitted to the jury with full and proper instructions, which were not excepted to," it must be presumed that suitable instructions were given regarding the testimony thus admitted. The confession and statements appear to have been made voluntarily, and not under threat or duress, or in consequence of any inducement. Though a witness at the inquest, he was not summoned, and was not compelled to testify, and was warned that he was not obliged to criminate himself. The fact that he signed the written statement and swore to it did not render it inadmissible. *Commonwealth* v. *King*, 8 Gray, 501. *Commonwealth* v. *Cuffee*, 108 Mass. 285. *Commonwealth* v. *Smith*, 119 Mass. 305. *Commonwealth* v. *Bradford*, 126 Mass. 42, 45, 46. *Commonwealth* v. *Preece*, 140 Mass. 276. *Teachout* v. *People*, 41 N. Y. 7.

4. The evidence was ample to warrant the jury in finding that the defendant owned the building, and the request that the jury be instructed to return a verdict for the defendant by reason of the failure of the government to prove the ownership as alleged was rightly refused.

*Exceptions overruled.*