COMMONWEALTH *vs.* WILLIAM M. BOND.

Worcester.    October 4, 1897. — December 8, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Arson — Confession.*

At the trial of an indictment of a boy sixteen years of age, and of less than average
intelligence, for setting fire to a barn, the court said that, while, not to speak of
an earlier examination, the manner in which the written confession was pre-
pared deserved criticism, as every word was put into the boy's mouth by one in
whose power he probably seemed to himself to be, yet it could not say, as mat-
ter of law, that the confession was wrongly admitted, as it purported on its face
to be made of his own free will without hope of favor and after having been
duly warned, and as the judge who tried the case and saw the parties was satis-
fied to let it in; and the court must presume that the jury were of his opinion.

INDICTMENT, alleging that the defendant at Oxford "the barn
of Frank Germain, otherwise called Frank A. Germain, feloni-
ously, wilfully, and maliciously did set fire to and burn."

At the trial in the Superior Court, before *Wardwell*, J., there
was evidence tending to show that the defendant was a boy six-
teen years of age, and of rather below average intelligence; that
having been summoned to appear at the Fire Marshal's office,
in Boston, he went there, accompanied by one Chaffee and one
Scott, and without the knowledge of his father, and that the fol-
lowing interview took place between him and the Fire Marshal.

The last named testified: "I asked him his name, age, and
residence, which he gave me. I said to him, 'You have been
having quite a number of fires in Oxford.' He smiled, and said
they had. 'Now,' I said, 'I want you to tell me about them,
but before you do, I want to tell you about the different kinds of
fires that we have to deal with. First, there is a class who set
fires to get the insurance, and to defraud insurance companies.
Second, there is a class who do it for spite. These people are a
menace to society, and deserve no pity or sympathy. Third, there
is a class, at a certain age, who have a mania for setting fires,
without an evil motive, such as women in pregnancy, girls
coming to puberty, and boys of your age and habits, for whom

I have sympathy, and I take it that this fire was one of this class.' The boy said, 'Do you think that I set the fire?' I said, 'Yes'; and he said, 'Why?' and I said, 'No matter.' He said, 'I had nothing to do with the Chaffee fire.' I said, 'Go on and tell me about the Germain fire.' The boy said, 'What will they do with me, will they send me away?' I made no reply. (The witness saying on cross-examination that the reason why he did not reply was that he thought that it would affect the boy so that he would break down if he told the boy what he asked.) I then asked him how many matches he used to set the fire with; he said, 'One.' I asked him where he got it, and he said, 'At Germain's kitchen.'

" I said, 'Now I want to call in some witnesses, and this evidence may be used against you.' The boy then said he had no intention of setting fire when he started, but that, when he passed the barn, the hay stuck out of the window and he lighted it, and that he did it to see it burn, for the excitement. I then called in the stenographer, and dictated the paper called the 'confession,' the first part of which I dictated without saying anything to him up to the word 'prosecution'; and then I used my own language, and after dictating a few words asked him if it was all right, to which he replied that it was; then I dictated a little more, asking him again, and so on until it was all dictated. Then it was all read over to him again before he signed it, and he said it was all right. After showing him that it might be used as evidence in court against him, he signed it, and I had him hold up his hand and make oath to it before me, and the witnesses sign it."

The confession, which was then admitted, against the objection of the defendant, and which was witnessed by Scott and Chaffee, was as follows:

" I, William M. Bond, of Oxford, Massachusetts, hereby make the following voluntary confession, of my own free will and accord, without hope of favor or reward by reason of my so doing, and having been fully warned that the same might be used against me in criminal prosecution:

" On the evening of October 11th, 1896, between six and seven o'clock, I set fire to an old house of Frank A. Germain, which was used as a barn, by igniting some hay which was pro-

jecting from a window on the side of the barn. I did this for the purpose of burning the building and having a little excitement.

" I have carefully read the above statement and declare the same to be true."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

The case was argued at the bar in October, 1897, and afterwards was submitted on briefs to all the justices.

*W. A. Gile,* for the defendant.

*H. Parker,* District Attorney, for the Commonwealth.

HOLMES, J. In regard to confessions, statements made in contemplation of death and the like, where there is a preliminary question of fact to be decided in order to determine the admissibility of the evidence in a criminal case, the practice is well settled in this State. The judge finds the fact in the first instance. If he is of opinion that the confession was not voluntary, or that when the declaration was made the speaker expected to recover, or, in general, that the preliminary facts were not such as to make the evidence admissible, he rejects it, and that is the end of the matter unless some question of law is reserved. *Commonwealth* v. *Bishop,* 165 Mass. 148, 152. If he finds the other way and is of opinion that the evidence is admissible, he admits it, but instructs the jury to disregard it if they do not agree with him. *Commonwealth* v. *Preece,* 140 Mass. 276, 277. *Commonwealth* v. *Brewer,* 164 Mass. 577, 582. *Commonwealth* v. *Piper,* 120 Mass. 185, 188. Compare *Commonwealth* v. *Culver,* 126 Mass. 464, 466. Of course the accused has the further safeguard of a right to except, and it may be that, in considering exceptions to the admission of confessions, courts have used a slightly greater latitude than in ordinary cases of a generally similar kind. For instance, it is said that, *prima facie,* confessions are voluntary ; *Commonwealth* v. *Sego,* 125 Mass. 210, 213 ; and if so, there always is some evidence that they are admissible. Yet the appellate courts not infrequently hold them inadmissible. *Commonwealth* v. *Nott,* 135 Mass. 269. *Commonwealth* v. *Myers,* 160 Mass. 530, 532. See *Commonwealth* v. *Morey,* 1 Gray, 461, 463; *Commonwealth* v. *Tuckerman,* 10 Gray, 173, 191, 192; *Commonwealth* v. *Flood,* 152 Mass. 529; *Com-*

*monwealth* v. *Kenney,* 12 Met. 235, 237, 238.    But the question
is whether there was any evidence to justify the admission, even
if a greater freedom is to be used in considering the evidence as
a whole, and in disregarding a merely technical possibility. *Commonwealth*
v. *Coe,* 115 Mass. 481, 504, 505.    *Commonwealth* v.
*Piper,* 120 Mass. 185, 188.    *Commonwealth* v. *Gray,* 129 Mass.
474, 475.    *Costelo* v. *Crowell,* 139 Mass. 588, 590.    *Commonwealth*
v. *Preece,* 140 Mass. 276, 277.    *Commonwealth* v. *Robinson,* 146
Mass. 571, 580.

In the case at bar, considering the boy's capacity, there were
strong reasons in the way in which he was treated for hesitating
to accept his confession.    Not to speak of the earlier examination,
the manner in which the written confession was prepared
deserves criticism, as every word of it was put into the boy's
mouth by one in whose power he probably seemed to himself to
be.    Nevertheless, it purports on its face to be made of his own
free will, without hope of favor, and after he had been duly
warned.    The judge who tried the case and saw the parties was
satisfied to let it in, and we must presume that the jury were of
his opinion.    We cannot say, as matter of law, that the admission
of the evidence was wrong.    See *Commonwealth* v. *Wesley,*
166 Mass. 248; *Commonwealth* v. *Cuffee,* 108 Mass. 285.

*Exceptions overruled.*