THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LAFAYETTE GRUFF, PLAINTIFF IN ERROR.

Argued June 17, 1902—Decided July 7, 1902.

1. The statutes authorizing the Court of Quarter Sessions to organize the grand jury, and to receive and transmit to the Oyer for trial indictments which the Court of Quarter Sessions is not empowered to try, are valid.

2. On trial of an indictment the defendant objected to the admission of his confession in evidence before the jury, and the state alleged that the confession itself would show the objection to be groundless; thereupon the judge, in the absence of the jury, received evidence of the substance of the confession, and finding thereby that the objection was groundless, permitted the confession to be related before the jury. *Held*, not erroneous.

3. If on trial of an indictment for murder the judge uses the word ·"murder" to denote murder in the second degree, but explains to the jury the distinction between "murder" so understood and murder in the first degree, no error is thereby committed.

On error to the Camden Oyer and Terminer.

For the state, *Frank T. Lloyd,* prosecutor of the pleas.

For the defendant, *John Meirs* and *Thomas P. Curley.*

The opinion of the court was delivered by

DIXON, J.  At the last term of the Camden Oyer the defendant was convicted of murder in the first degree, and now seeks by writ of error to reverse the judgment.

His first ground of complaint is that the indictment against him was found by a grand jury organized in the Court of Quarter Sessions and was presented to that court, although that court had not power to try an indictment for such a crime.

The course pursued in the courts below is expressly sanctioned by the Criminal Procedure act (*Pamph. L.* 1898, *p.* 866), the first section of which enacts that the Court of Quarter Sessions shall have cognizance of all crimes of an indictable nature perpetrated in the county, and the fifth and sixth sections of which authorize the court to organize the grand jury and receive indictments presented by that body, when no justice of the Supreme Court is present, in the same manner as the Court of Oyer and Terminer might do.  The only limitation upon the power of the Sessions in such matters is contained in the proviso of the first section, that the Sessions may not try indictments for treason or for murder, but must deliver such indictments, when presented before it, to the Supreme Court or Court of Oyer and Terminer for trial.  The substance of this legislation has existed for many years.  In view of the authority expressly conferred upon the legislature by the constitution, to ordain and establish courts other than those named in that instrument, we entertain no doubt as to the validity of these laws.

The next ground of complaint relates to the admission, as evidence, of a confession made by the defendant.

The crime with which the defendant stood charged was the killing of his wife at Westmont, an act which was at first thought to have been committed by shooting. On the day when the homicide took place the defendant was arrested by Jacob Schiller, and he talked to him on the way to the office of the public prosecutor. On arriving at that office, Schiller, in presence of the defendant, said to the assistant prosecutor, "This man would like to make a statement about the shooting affair at Westmont." Thereupon, that official said to the defendant, "Are you the man that has been making all this trouble?". The defendant answered, "I am." Then the assistant prosecutor said to him, "I am the assistant prosecutor and it is my business to help investigate crime. You are under arrest and you do not have to talk at all about it. I do not make any promise to you for making the statement, and what you say will be used against you. It must be a purely voluntary statement." To this the defendant replied that he wanted to make a statement, and forthwith proceeded with the "confession" that was offered in ·evidence. The facts above mentioned having been sworn to by witnesses in presence of the jury, the defendant's counsel still objected to the admission of the confession, on the ground that the defendant was not shown. to have been aware of the charge against him. In answer to this objection, the state alleged that the confession itself would fully evince the defendant's knowledge on that point, and the trial justice, assuming that such knowledge ought to be shown, ruled that he would hear the confession in the absence of the jury, and would not permit the jury to hear it unless he was satisfied that the defendant knew at the time to what the warning given by the assistant prosecutor referred. That course being adopted, the confession afforded indubitable proof of the defendant's knowledge, and thereupon the confession was testified to before the jury.

It is perfectly manifest that this procedure could work no wrong to the defendant.

When the question of admitting a prisoner's confession as evidence of his guilt is pending, it is the duty of the trial judge to ascertain whether the confession was voluntarily made, without the influence of threats or promises, or perhaps of deception. *Roesel* v. *State,* 33 *Vroom* 216; *Bullock* v. *State,* 36 *Id.* 557; *State* v. *Young,* 38 *Id.* 223.

On these points there is no room for hesitation in the case before us; the rights of the defendant were carefully and completely guarded.

But it is now claimed that it was wrong for the trial justice to look into the confession for the purpose of determining any question relating to its admissibility, and that it was also wrong for him to receive any testimony in the absence of the jury.

As to these alleged errors, it is plain that the declarations of the defendant might afford legitimate evidence of his knowledge, as they also might respecting his willingness to speak and his freedom from improper influences. The trial justice, therefore, having a duty to discharge which required that he should be informed touching these particulars of the defendant's mental attitude, did right in examining the defendant's declarations respecting them; and this duty of the justice being distinct from that of the jury, it was not erroneous for him to conduct such examination out of the hearing of the jury. Usually, indeed, the testimony to be considered by the judge on the points mentioned should be taken in the presence of the jury; for it will tend, not only to instruct the judge as to the admissibility of the confession, but also to enlighten the jury as to the credibility of the confession if admitted in evidence. But when, as here, the evidence tendered on the preliminary question of admissibility is such as would unfavorably affect the prisoner in the minds of the jury, and illegally if the confession were finally held to be not admissible, it certainly promotes the due administration of law for the judge alone to hear that evidence in the first instance. If he then holds the confession to be admissible, the same evidence, so far as it relates to the credibility of the confession, can be repeated before the jury. Such a course

avoids, on one hand, the exclusion of a confession which has, in fact, all the essentials of legal evidence, although those essentials may not be susceptible of extrinsic proof, and, on the other hand, avoids the disclosure to the jury of inculpatory declarations of the prisoner which, in fact, lack some essential of legal evidence.

The conduct of the trial in this matter was unexceptionable.

The last ground of objection urged on behalf of the defendant is that the trial justice, in charging the jury, used the simple term "murder" to denote what is generally called "murder in the second degree," and so, it is claimed, did not properly differentiate between the two degrees of "murder."

But, while we think it clearer, and therefore preferable, to follow the nomenclature adopted in our later statutes dealing with the crime known in the common law as murder, yet it would be unreasonable to suppose that in the present case the jury were misled or left uninstructed by this departure from usage. The defendant killed his wife by cutting her throat after firing two shots at her without effect, and undoubtedly was guilty of murder unless exculpatory circumstances appeared. After charging the jury on this head, the justice told the jury that the distinction between murder and murder in the first degree was a very great one, and clearly presented to them the elements necessary to raise the crime of murder, as he had explained it, to the crime of murder in the first degree. On this presentation, the jury, in order to reach the verdict rendered, must have determined that the killing was willful, deliberate and premeditated. That determination was, under the evidence in the cause, an inevitable one for intelligent minds.

We discover no reason for reversing the judgment, and consequently it must be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, COLLINS, FORT, GARRETSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 11.

*For reversal*—None.