THE STATE OF UTAH, Respondent, v. SETH M. WELLS, Appellant.

No. 1910.   Decided March 12, 1909 (100 Pac. 681).

1. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—PROVINCE OF COURT AND JURY. Preliminary to admission of confessions, a *prima facie* showing of voluntariness, to be determined by the court, after cross-examination by defendant, must be made, and, after this has been made, and the confession admitted, defendant may introduce evidence that it was not voluntary; and, the evidence being conflicting, the question of voluntariness, like other questions of fact, is to be left to the jury, with instructions to disregard the confession, unless convinced it was voluntary. (Page 405.)

2. ABORTION—NECESSITY FOR PRESERVING LIFE—EVIDENCE. Evidence, on a prosecution for abortion, *held* insufficient to show that the production of the miscarriage was not necessary to save the woman's life, the burden of proving which, under Comp. Laws 1907, section 4226, defining the offense, is on the state. (Page 407.)

3. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE. In case of circumstantial evidence, circumstances must be proved which not only agree with, and concur to show defendant's guilt, but are inconsistent with any other reasonable conclusion. (Page 408.)

4. ABORTION—NECESSITY FOR PRESERVING LIFE—EVIDENCE. Evidence that the woman was unmarried, and that defendant, who pro-

duced the miscarriage. had had illicit intercourse with her, is not inconsistent with the production of the miscarriage having been necessary to save her life.   (Page 410.)

APPEAL from the First District Court, Cache County.— *Hon. W. W. Maughan,* Judge.

The defendant was convicted of abortion and appealed.

REVERSED.

*A. J. Weber* and *E. A. Walton* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

STRAUP, C. J.

1.   The defendant was convicted of the crime of producing an abortion upon the woman named in the information.   At the trial the state offered to prove a confession claimed to have been made by the defendant.   The state first attempted to show that the alleged confession was made voluntarily.   The defendant's counsel asserted that the voluntariness of the confession would be disputed, and requested that such matter in issue be first tried before the court, in the absence of the jury, and objected to its being heard in their presence.   The court overruled the objection, denied the request, and received the evidence of both parties on such question in the presence of the jury.   The evidence on such matter is very conflicting.   On the part of the state it tends to show that the confession was voluntary; on the part of the defense that it was made under threat, coercion, and duress, and was involuntary.   After hearing such evidence the court, without passing on the question, then admitted the confession itself in evidence, and at the conclusion of all the evidence in the case submitted the question to the jury, charging them that, unless they were convinced by the evidence beyond a reasonable doubt that the alleged confession

35 Utah—26

was entirely voluntary, and made without threat, coercion, or duress, they should wholly disregard it, and that, though they found the confession was voluntary, still they should disregard it, unless they were convinced from the evidence that the statements or confession made by the defendant referred, and were intended by him to refer, to the specific charge alleged in the information.

While an assignment of error is made that the court erred in admitting the confession in evidence, yet this assignment is not urged; nor is it referred to or discussed by counsel in their brief. The only assignment in respect of the confession of which complaint is made and discussed is that the court erred in hearing the evidence relating to the question of voluntariness of the confession in the presence of the jury. The correctness of the court's ruling involves the further question as to whether the determination of the question of voluntariness was alone within the province of the court, or the court and jury. In some jurisdictions it has been held that the question is alone for the court. Among the courts so holding may be cited: *Hunt v. State,* 135 Ala. 1, 33 South. 329; *Holland v. State,* 39 Fla. 178, 22 South. 298; *State v. McKenzie,* 144 Mo. 40, 45 S. W. 1117; *State v. Gorham,* 67 Vt. 365, 31 Atl. 845; *State v. Gruff,* 68 N. J. Law 287, 53 Atl. 88; *Hauk v. State,* 148 Ind. 238, 46 N. E. 127, 47 N. E. 465. Some of the courts so holding also hold that the preliminary matter should be admitted and heard before the court not in the presence of the jury. (*Ellis v. State,* 65 Miss. 44, 3 South. 188, 7 Am. St. Rep. 634; *Biscoe v. State,* 67 Md. 6, 8 Atl. 571.) Others hold that if the confession is admitted in evidence, the hearing of the preliminary matter in the presence of the jury is not prejudicial. (*Kirk v. Territory,* 10 Okl. 46, 60 Pac. 797; *People v. Kamaunu,* 110 Cal. 609, 42 Pac. 1090). Many if not all, courts holding that the question is for the court also hold that, if the court determines that the confession was voluntary, and admits it in evidence, then the evidence which was heard before the court on the question of voluntariness

should be repeated and let to the jury, if the matter was heard in their absence, not for the purpose of themselves determining whether the confession was or was not voluntary, but for the purpose of determining the weight and credit that should be given the evidence of the confession. In many other jurisdictions it has been held that, where the evidence on the question of voluntariness is conflicting, or where the court is in doubt whether the confession was or was not voluntary, the whole matter may be left to the jury under instructions to disregard the confession, unless they find that it was made voluntarily. Among the courts so holding may be cited: *State v. Storms,* 113 Iowa 385, 85 N. W. 610, 86 Am. St. Rep. 380; *People v. Cassidy,* 133 N. Y. 612, 30 N. E. 1003; *Commonwealth v. Bond,* 170 Mass. 41, 48 N. E. 756; *State v. Moore,* 160 Mo. 443, 61 S. W. 199; *Wilson v. United States,* 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; *Roesel v. State,* 62 N. J. Law, 216, 41 Atl. 408; *Burdge v. State,* 53 Ohio St. 512, 42 N. E. 594; *People v. Howes,* 81 Mich. 396, 45 N. W. 961; *State v. Westcott,* 130 Iowa 1, 104 N. W. 341.

The rule, as stated by the Massachusetts court, is as follows:

"The judge finds the fact in the first instance. If he is of opinion that the confession is not voluntary, or that when the declaration was made, the speaker expected to recover, or in general that the preliminary facts were not such as to make the evidence admissible, he rejects it, and that is the end of the matter, unless some question of law is reserved. If he finds the other way, and is of opinion that the evidence is admissible, he admits it, but instructs the jury to disregard it if they do not agree with him." (*Commonwealth v. Bond, supra.*)

By the Supreme Court of the United States:

"When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should

reject the confession if upon the whole evidence they are satisfied it was not the voluntary act of the defendant." (*Wilson v. United States, supra.*)

In still other jurisdictions the rule is, and we think correctly, stated as follows:

"If it appear from the testimony of the witness that the alleged confession was not voluntary, it must be excluded, and the court must at once so decide. But if voluntary, the witness can testify to it; and, if subsequently in the course of the trial there be evidence tending to contradict the witness, then the question of credibility is one for the jury, who must be instructed that if not voluntarily made, they must wholly disregard it. . . . While some of the cases from other states, cited by counsel for the prisoner, seem to hold that it is the sole duty of the court to at once decide before hearing the confession, from the conflicting evidence of witnesses, whether the confession was voluntary, the settled practice in this state is otherwise. The prisoner here has the right to examine fully the witness called by the commonwealth to establish the alleged confession. If it then appear that it was not voluntary, it should be rejected without being heard. If it appear to have been voluntary, then it should be received. If afterwards there be testimony contradicting the witness, then it becomes a question for the jury." *Commonwealth v. Epps*, 193 Pa. 516, 44 Atl. 570.

This rule is also well stated in the charge of the trial court, which was approved by the appellate court, in the case of *Price v. State*, 114 Ga. 855, 40 S. E. 1015:

"In determining the question as to whether or not a confession is admissible as evidence in the case, the law puts upon the presiding judge the duty of determining, by a preliminary investigation of the question, whether or not apparently under the evidence, whether preliminarily under the evidence, that confession was made under such circumstances as authorized it to go to the jury, to be considered by them as testimony in the case, and, if the testimony is permitted to go to the jury by the presiding judge as being primarily admissible, the fact that it is permitted to go to the jury by the presiding judge is not conclusive upon the jury that the confession, if one was made, was made under such circumstances as orders and requires the jury to consider the same as evidence in the case; the law leaving to the jury the determination of the question of whether or not the evidence, or the testimony which is

offered on the part of the state, of a confession, was in point of fact a confession, and whether or not the same was made under such circumstances as authorize you to consider it."

To the same effect are: *Irby v. State,* 95 Ga. 467, 20 S. E. 218; *Clay v. State,* 15 Wyo. 42, 86 Pac. 17, 544; *Hamlin v. State* [Tex. Cr. App.], 47 S. W. 656; Rice, Crim. Ev., sec. 308.

We think many of the courts which hold that the question of voluntariness on conflicting evidence is for the jury in effect reached the same conclusion. We are therefore of the opinion that, when evidence of the defendant's confession is offered by the state, it, on the defendant's objection, must first introduce some evidence tending to show that the confession was voluntary; that it is alone within the province of the court to determine, not whether the confession was or was not voluntary, but whether a sufficient *prima facie* showing, with respect to its voluntariness, is made to warrant a finding that it was voluntary; that, before the court rules upon the question, the privilege should be given the defendant, if he requests it, to cross-examine the witness, or witnesses, by whom the state seeks to show the voluntariness of the confession; that when such a showing has been made, and the court determines that it is *prima facie* sufficient to authorize such a finding, then the court should admit the confession itself in evidence, otherwise not; that when the state has made such *prima facie* showing, one which primarily tends to show that the confession was voluntary, the defendant may not, as matter of right, and before the confession itself is admitted, then offer evidence to dispute or contradict the preliminary testimony offered, but may do so afterwards; and that, when the evidence is conflicting, or is open to different inferences, the question of voluntariness should be left to the determination of the jury, like every other question of fact, under instructions to wholly disregard the evidence of the confession, unless the jury are convinced and find, upon all the evidence adduced,

that it was voluntary. We think no error was committed in the ruling.

2. The defendant further complains upon the ground that the evidence was insufficient to support the verdict. The statute (section 4226, Comp. Laws 1907) defines the offense as follows:

"Every person who provides, supplies, or administers to any pregnant woman, or procures any such woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable," etc.

The defendant contends that the evidence is not sufficient to show that it was not necessary to procure the miscarriage of the woman named in the information to preserve her life. Under such a statute as this the authorities generally hold, and we think correctly, that it is essential for the state to allege and prove that the production of the miscarriage was not necessary to save the woman's life, and that the burden of proving such fact is upon the state. (1 Cyc. 181, and cases there cited.) It, however, has been held in some jurisdictions that the burden of proving the affirmative is upon the defendant. (*People v. McGonegal,* 62 Hun, 622, 17 N. Y. Supp. 147.) It is conceded by the Attorney-General that the burden was upon the state to allege and prove the negative in the statute. The trial court so charged the jury.

The woman on whom the alleged abortion was committed was a witness for the state, and testified that she was unmarried, and was twenty-five years of age; that the defendant, who was a physician and surgeon, at about the time of conception, and at divers other times, had illicit sexual intercourse with her; that she was pregnant, and had a miscarriage on the 4th day of October, by reason of an operation performed upon her on the 5th day of September by the defendant, by means of instruments, and that before such operation (just how long before the evidence does not show)

the defendant had given her some pills, some of which she took, but discontinued taking others because those taken had made her sick at the stomach. Another witness, a physician and surgeon, testified for the state that he made an examination of the woman on the 5th day of September, and found the uterus enlarged, and every indication of a pregnant uterus; that there was an abrasion of the cervix of the uterus, and that the uterus had a stretched appearance; that on the 4th day of October he attended the woman, when she had a miscarriage of about a four-month fœtus. A brother of the woman testified for the state that on the evening of the 3d day of October, the day when the defendant's preliminary examination was had before the magistrate, he met the defendant on the street, and that "I told him that I wanted to know the truth in reference to the trouble between him and my sister that he was charged with, whether it was true or not, and he told me that he was guilty. And we talked about it there, and he said he would like to fix matters up if he knowed how, and asked me if I had any suggestions as to how to fix them up, and I said 'No.'" This is all the evidence which the state claims tends to prove the negative in the information. The physician who testified for the state, and who had examined the woman on the day of the alleged commission of the abortion, gave no evidence as to the health or physical condition of the woman, except that she was pregnant; nor did the woman, or any other witness, testify as to the condition of her health or other physical conditions; nor is there any evidence in the case from which such conditions may fairly be inferred.

The authorities are to the effect that, when it is shown that the woman was healthy and in a normal condition, and medicine was administered to her, or an operation performed upon her to produce a miscarriage, the evidence is sufficient to raise the inference, and to find the fact, that the production of the miscarriage was not necessary to save the woman's life (*Howard v. People*, 185 Ill. 552, 57 N. E. 441; *Hatchard v. State*, 79 Wis. 357, 48 N. W. 380), or that it is suffi-

cient where it is shown that there was nothing in the condition of the woman to indicate any necessity for a procured miscarriage (State v. Bly, 99 Minn. 74, 108 N. W. 833), and that the negative in the information need not be shown by direct or positive evidence, but may be shown by circumstantial evidence (Diehl v. State, 157 Ind. 549, 62 N. E. 51). But, as in all cases of circumstantial evidence, not only must circumstances be established which agree with and support the hypothesis which they are adduced to prove, and concur to show the defendant's guilt, but they must also be inconsistent with any other reasonable conclusion. It is not enough that circumstances be proven from which an inference may be deduced that the production of the miscarriage was not necessary to preserve the life of the woman, but they must also be inconsistent with every other reasonable conclusion. "The conclusion is not supported by circumstantial evidence, unless the facts relied on are of such a nature, and so related to each other, that no other conclusion can fairly or reasonably be drawn from them, and this requirement is strictly enforced, where decisive direct evidence is probably obtainable, but is not produced." (17 Cyc. 817.) If an operation to produce a miscarriage is performed on a woman of ordinary good health and of normal physical conditions, the performance of such an operation is inconsistent with the conclusion that it was necessary to preserve the life of the woman. But in such case the good health and physical conditions of the woman may not be presumed, in the absence of testimony tending to show them, for the rule is also well settled that, "where circumstantial evidence is relied upon, the circumstances must be proved, and not themselves presumed." (17 Cyc. 817.)

With these observations we pass to the evidence in hand. The most important is that of the defendant's confession. We will assume that the confession is open to the claim that it related to the specific crime of which the defendant was charged, and that, under the evidence, the jury was justified in finding that it referred to such charge. There is, how-

ever, another well-recognized principle of the criminal law that the state is required to prove the *corpus delicti* independent of the defendant's confession, and must so prove it beyond a reasonable doubt, by evidence other than the confession of the accused. (*State v. Laliyer,* 4 Minn. 368 [Gil. 277.]) In all trials for crime the prosecution must prove to the satisfaction of the jury that a crime has been committed before it proceeds to inquire as to whom is the criminal. What is the *corpus delicti* of the crime here charged? The state sufficiently proved that the woman was pregnant; that the defendant performed an operation on her, and that she, in consequence of suoh operation had a miscarriage. But the proof of such facts does not establish the crime of abortion as defined by the statute. Under such a statute it was also essential to prove that the miscarriage was not necessary to preserve the life of the woman. Until such fact was proven the body of the crime was not proven. If the confession of the accused may be received to alone establish an essential element of the body of the crime, then may his confession be received to establish other essential elements, and thus the rule that the *corpus delicti* must be proved beyond a reasonable doubt, independent of the confession, is violated.

It is further said that the woman was unmarried, and that the defendant had illicit sexual intercourse with her. These circumstances were of course material and proper to be shown, but the fact that the woman was unmarried does not tend to show that the operation was not necessary to save her life any more than if she had been married. If any presumptions at all were to be indulged, it is more likely, for various reasons, that it might be more necessary, in order to preserve the life of the woman, to perform such an operation on an unmarried than on a married woman. The fact that the defendant had illicit sexual intercourse with the woman furnishes a basis for a motive to commit the offense, but an essential element of a crime is not proven by merely proving that the defendant had some motive to commit the offense.

The fact that he had illicit sexual intercourse with the woman does not necessarily agree with and support the hypothesis which it is adduced to prove—the conclusion that the operation was not necessary to preserve the life of the woman—and it is not of such a nature, and so related, that no other conclusion can fairly or reasonably be drawn, and it is not inconsistent with the conclusion that the operation was necessary. If, because of the woman's condition of ill health, or other physical conditions, or bodily ailment, such an operation became necessary to save her life, it was just as necessary to perform the operation whether the woman was pregnant by the defendant or by another. It needs no great amount of logic to show that the fact or circumstance that the defendant had illicit sexual intercourse with the woman, and that the producing of the miscarriage was necessary to save her life, may be consistent, and that both may be true. When a fact which is an essential element to constitute a crime is sought to be proven by circumstances alone, it is not enough that the conclusion sought to be proven may be inferred therefrom, but they must also be inconsistent with every other reasonable conclusion.

We are referred to the case of *State v. Aiken,* 109 Iowa 643, 80 N. W. 1073, as an authority that proof of the defendant's illicit sexual intercourse with the woman, and that she was unmarried, was sufficient to prove the negative in the information. The statute there was like ours. The court said:

"As a general rule, when the offense is grounded on a negative, or when that negative is an essential element of the crime, the burden is on the state to prove it. No doubt all that is required of it in the first instance is to make out a *prima facie* case, but that it must do in order to make out its case. All that is disclosed by the evidence on this point is that the woman on whom the operation was performed went with her mother to the office of the defendant, who is a doctor, and requested her to perform an abortion. The woman was advanced in pregnancy for from five to six months, and the operation was successfully performed. There is no evidence of illicit intercourse, no showing as to whether she was

married or unmarried, and nothing to indicate the condition of her health, except that she walked to the office of the defendant two or three times. Surely this does not prove beyond a reasonable doubt that the miscarriage was not necessary to save the life of the mother. And we are of the opinion that it does not make out even a *prima facie* case. . . . Every presumption is in favor of defendant's innocence; and, if the facts shown are capable of explanation on any reasonable hypothesis in favor of innocence, there can be no rightful conviction. There was not sufficient evidence to support the material allegations of the indictment, and defendant's motion for a new trial should have been sustained."

The court did not there say that, if proof had been made of illicit intercourse, and that the woman was unmarried, such evidence would have been sufficient to show that the operation was not necessary to save the woman's life; and, if the court had said so, the statement would have been *obiter dictum*. The court there recognized the general rule that proof of the pregnant condition of the woman, and the production of a miscarriage by a physician, is not sufficient evidence to establish the negative averment in the information, and such is, we think, the logical conclusion, and the weight of authority. (*State v. Clements,* 15 Or. 237, 14 Pac. 410; *Moody v. State,* 17 Ohio St. 110; *State v. Glass,* 5 Or. 73; *State v. Magnell,* 13 Pen. (Del.) 307, 51 Atl. 606; *Howard v. People, supra; Hatchard v. State, supra; Diehl v. State, supra.*)

In the case of *State v. Clements, supra,* the court said:

"Proof that a physician, in his professional treatment of a woman pregnant with child, had used means, with the intent thereby to destroy the child, and the death of the child was thereby produced, is not evidence that the treatment was not necessary to preserve the life of the mother; nor, if it produced the death of the mother, that it was not an honest effort, on the part of the physician, to preserve her life. The experience of mankind shows that cases have often arisen in which such treatment has necessarily been resorted to and in the absence of other proof, the law, in its benignity, would presume that it was performed in good faith, and for a legitimate purpose."

In the case of *Moody v. State, supra,* it was said:

"The circumstances attending the procurement of an abortion, tending to prove that it was unnecessary for the purpose of preserving the life of the mother, ordinarily can be shown quite as well on the part of the prosecution as it can be proved by the defendant that it was necessary for that purpose. . . . . The statute does not declare every procurement of an abortion to be an offense, but it is so only when it is not done for the purpose of saving the life of the mother. The absence of this necessity is then so far descriptive of the crime that the offense cannot be established without proof that such necessity did not exist. It is the producing an abortion in the absence of such necessity that, upon the theory of the statute, constitutes the offense."

We are aware that in some jurisdictions it has been held that, while it was necessary for the state to aver and prove the negative, still the mere proof of the pregnancy of the woman, and that the defendant produced the miscarriage, was sufficient to warrant a finding for the state upon such issue (*State v. Schuerman*, 70 Mo. App. 518), but no reasons are there given for such a conclusion. The reasons given in the case of *State v. Lee*, 69 Conn. 186, 37 Atl. 75, are:

"We think it was incumbent upon the state in some way to establish the truth of the negative averment. The want of necessity was an element of the crime, as charged in the information, as much as the act or the intent charged; and the burden of proving the former, as well as the latter, elements, rests upon the state for the same reason, namely, because under our law it is the duty of the state to prove guilt, and not that of the accused to prove innocence. . . . The truth of this negative averment as part of the state's case must in some way be made *prima facie* to appear at the trial, but it need not necessarily be so made to appear by evidence. For instance, where there is a presumption of law in favor of the truth of an averment of this kind, the state may in the first instance, and until evidence to the contrary is introduced by the defendant, rest upon the presumption, just as it might upon evidence sufficient to make out a *prima facie* case. In such case the burden of proving the averment still rests upon the state, but by the presumption it is relieved for the time being from introducing evidence in support of the averment, because the presumption under such circumstances stands in the place of the evidence."

We do not think there is "a presumption of law in favor of the truth" of such an averment. Presumptions of law

derive their force from the law or jurisprudence, not from logic or probability. They are uniform and constant assumptions applicable generally. (1 Elliott on Ev., section 83.) The very wording of the statute itself forbids the indulgence of such a presumption. The Legislature, by placing the negative in the statute, and making it a part of the clause and section creating the offense, recognized that some abortions are necessary to save the life of the woman, and that others are not. And, in the language of the Ohio court, "it is the producing of an abortion in the absence of such necessity that, upon the theory of the statute, constitutes the offense." The questions for review in the Connecticut case were the refusal of the court to charge that "it was incumbent on the state to prove, not only that the accused committed acts with the intent to commit an abortion, but that it was not necessary for the purpose of preserving the woman's life," and in giving the charge that "the fact that it is necessary to use such means or to procure a miscarriage is a matter of defense which the accused may establish if such be the fact; but it is not incumbent on the state in the first instance to establish the negative that it was not necessary." In refusing such request, and in giving such charge, we think the court clearly placed the burden, not on the state to prove the negative, but on the defendant to prove that it was necessary. The correctness of that charge and of the ruling refusing the request were the questions before the appellate court for review, who approved the ruling and held the charge good, and affirmed the judgment of conviction. In so doing we think that the court, notwithstanding its expressions in the opinion, necessarily held with the New York court (*People v. McGonegal, supra*), that the negative in the statute is matter of defense, and that the affirmative must be established by the accused, a holding which we think is against the great weight of authority under statutes such as we have, making the negative an essential element of the offense.

If it was not necessary to produce the miscarriage to pre-

serve the life of the woman, such fact could readily have been shown by the physician, who was a witness for the state, and who had examined the woman on the day that the alleged operation was performed, and by the woman herself, who was also a witness for the state. The observation made by the Ohio court that the circumstances attending the procurement of the abortion tending to prove that it was unnecessary to save the life of the woman ordinarily can be shown quite as easily on the part of the state as by the defendant, and that the rule as to the sufficiency of circumstantial evidence, as stated in Cyc., "is strictly enforced where decisive, direct evidence is probably obtainable, but is not produced," is here pertinent and applicable. When the physician and the woman, who were witnesses for the state, were not interrogated by it with respect to the health or physical condition of the woman, and the state failed to show by them, or by other evidence, that there was nothing in the condition of the woman to indicate any necessity for a procured miscarriage, it may be assumed that if the witnesses had been examined on such matters, the evidence elicited from them would have been against the state, or that the state overlooked the necessity of proving the negative in the statute, or else treated it as a matter of defense.

Because of the insufficiency of the evidence in this particular to sustain the verdict, the judgment of the district court is reversed, and the cause remanded for a new trial.

FRICK and McCARTY, JJ., concur.