Kinkead, J.
Defendant was indicted for abortion, and was convicted before a jury. On motion for new trial the contention is that there was no corroboration on the essentials of the crime.
On trial, the girl who aborted and the young man who was responsible for the trouble testified against defendant. 'Their testimony was to the effect that they were at the office of defendant twice. The first time they did not have the price; the second time, the girl said that defendant used some instrument, felt like it was cutting something; that he introduced something into the uterus two or three times. It is claimed that defendant stated that the girl would be sick in a couple of days. The young man, the author of the girl’s trouble, also testified that *201 he went with the girl to the office of defendant at the suggestion of the girl, and asked him if he could do anything for her, and he said he could. On the first visit White did not have sufficient money, it is stated, so that he returned a second time, when the abortion is claimed to have been committed.
The girl had a miscarriage within forty-eight hours after visiting the house of defendant.
The evidence against defendant as to the alleged illegal operation is that of the two accomplices and that of a colored maid that the girl and the young man visited the office of defendant, and the miscarriage.
There is evidence that the girl used a catheter, one witness being a doctor of this city, who testified that the girl had been to his office and had stated to him that she had used a catheter. White testified that he procured a catheter at a drug store in Newark, and that he used it on her himself.
At the close of the state’s case, motion was made by defendant for directed verdict, for the reason that there was no corroborative evidence of the two accomplices, the girl and White, the author of her trouble. The court was about to sustain the motion, when the state applied for an order re-opening its case in order to offer corroborative evidence. The motion was allowed, and the state offered the testimony of a colored maid of defendant, who testified that she saw Miss Snelling at defendant’s house on two occasions in February, 1916. She stated she heard no conversation between Dr. Holden and any one. She does not testify that Miss Snelling went into the office of defendant; stating merely that she saw the girl at the house of Dr. Holden twice.
‘The pertinent question for the court to decide is whether there is any evidence — direct or circumstantial — tending to corroborate the two accomplices on some of the material facts testified to by them.
The rule is aptly expressed by Houck, J., in Wayne county court of appeals in Lehr v. State, unreported, as follows:
“At common law the testimony of an accomplice, although entirely without corroboration, was sufficient to support a verdict *202 of conviction, but this rule does not now obtain in Ohio, and the law now is that one charged, with crime can not legally be convicted upon the uncorroborated testimony of an accomplice. The effect of corroborative evidence is for the jury, but whether there is anjr evidence, direct or circumstantial, is a question of law.
That is the rule of State v. Robinson, 83 O. S., 136. Summers, J., states that—
“It becomes necessary for the trial court not only to instruct the jury not to convict upon the uncorroborated testimony of an accomplice, but also to aid them in determining whether there is corroboration. The effect of the evidence is for the jury, but whether there is any evidence, direct or circumstantial, is a question of law. (99 Mass., 413.) It is not necessary that the crime charged be proven independently of the testimony of the accomplice, or that the testimony of the accomplice be corroborated in every particular in order that it may be said to be corroborated, but only that there be circumstantial evidence, or testimony of some witness other than the accomplice, tending to connect the defendant with the crime charged and to prove some of the material facts testified to by the accomplice.” See 23 C.C.(N.S.), 455, 460.
It seems to be enough that the evidence in corroboration satisfied the jury that the accomplice testified to the truth. (1 Cyc., 192, citing Reg v. Boyes, 1 B. & S., 311, holding it unnecessary to corroborate as to the very act.)
In People v. Josselyn, 39 Cal., 393, under a statute, it is held that the testimony of the woman alleged to. have aborted by reason of an instrument used by a physician, is not corroborated by evidence of others1 showing the fact of pregnancy, that she visited the office of the defendant, and that there was a miscarriage.
The crime of miscarriage consists of five essential elements: (1) Using an instrument or other means, (2) with intent to procure miscarriage, (3) actual miscarriage, and (4) it not being necessary, to preserve life, or (5) not having been advised by two physicians.
Miscarriage must result to constitute the crime. State v. Springer, 3 N. P., 120.
*203 The fact that the girl, Della Snelling, visited the house of defendant where he had his office, and that she had a miscarriage shortly thereafter is some evidence tending to prove the guilt of defendant. Miscarriage is to be deemed part of the crime, and 'this fact has been corroborated by other evidence than that of the accomplice herself. And the evidence of the colored maid that Della Snelling was at the house of defendant is also one essential fact. 'The circumstances of such visit by the girl at the house of defendant, and the miscarriage shortly thereafter, both of which are corroborated by other evidence, and the inferehees to be deduced therefrom, constitute corroborative evidence as to these essential facts or elements of the crime.
There must be adequate proof concerning the essential negative element required by statute that such miscarriage was not necessary to preserve the life of the girl.
The rule on this point is found in Moody v. State, 17 O. S., 111, where it is held to be incumbent on the state in order to convict, to prove that the act of abortion was not neecessary to preserve the life of the girl and mother.
It is held in this case that:
“The negative matter in the statute enters into the description of the offense, and (is) necessarily averred in the indictment.
“In such eases, it is a general rule that some proof must be given to sustain such negative allegations.
‘ ‘ Exceptions to the rule obtain only when the proof is readily at the command of the defendant, and is practically beyond the reach of the state.
‘ ‘ The circumstances attending the procurement of an abortion, tending to prove that it was unnecessary for the purpose of preserving the life of the mother, ordinarily can be shown quite so easily, on the part of the prosecution, as it can be proved by the defendant that it was necessary for that purpose.
“Upon the principles settled in the case of Cheadle v. State, 4 Ohio St., 477, and the authorities there cited, we think the charge was erroneous.
The question was not made, and it is not,, therefore, necessary for us to decide whether it devolved upon the state to prove that the abortion was not advised by two physicians to be necessary to preserve the life of the mother.
“It may not, however, be improper to remark that, from the nature of the case, it might be impossible for the state to prove *204 that such advice was not given; while it could, generally, be easily produced by the defendant, and that therefore the burden of proving this negative matter would not fall within the rule that controls the production of proof as to the other negative clause.
‘ ‘ There is, moreover, an obvious difference in the import of the two negative clauses of the statute. 'The statute does not declare every procurement of an abortion to be an offense,, but does so only when it is not done for the purpose of saving the life of the mother. The absence of this necessity is, then, so far descriptive of the 'crime, that the offense can not be established without proof that such necessity did exist.
‘ ‘ It is the producing an abortion in the absence of such necessity, that, upon the theory of the statute, constitutes the offense. Proof that it was done without this necessity would establish the crime, within the spirit and reason of the statute. * * * It is the absence of the necessity of saving life that is the essential part of the negative clauses,'which enters into the statutory description of the offense; and in contemplation of the statute, the advice of two physicians is sufficient of the existence of such necessity.
"Since, then, such advice is only evidence of necessity that forms the essential negative description of the crime in both negative clauses, and as it may usually be readily shown by the accused, and must ordinarily be so difficult, if not impossible, to be shown on the part of the prosecution, it might well be held, upon reason as well as authority, that it is unnecessary for the state to prove that the producing the abortion was not advised by two physicians further than such negative fact may be implied from the proof that it was not necessary to preserve the life of the mother.
"Nor would it follow, for reasons already indicated, that, if it be unnecessary for the state to prove the want of the advice mentioned in the second negative clause, it would be equally unnecessary to prove the absence of the necessity to save life.”
Under the rule of this case, and by the terms of the statute, it is incumbent on the state to prove that the miscarriage was not necessary to preserve the life of Della Snelling.
The evidence offered by the state on this point is as follows:
Question by the state:
"Q. I will ask you whether Dr. Holden at any time asked you whether or not any physician had advised you that an operation was necessary? A. If it was necessary?
*205 “Q. To save your life? A. I don’t believe he did.
‘ ‘ Q. I will ask you if Dr. Holden at any time told you that an operation was necessary to preserve your life? A. No, sir.
“Q. Had you been advised by any physician that an operation was necessary to preserve your life? A. No, sir.”
While Moody v. State, supra (p. 113), holds proof of the negative essential, the opinion contains a dictum, above quoted, and again repeated to draw specific attention to it, that:
“as it may usually be readily shown by the accused, and must ordinarily be difficult, if not impossible, to be shown on the part of the prosecution, it might well be held, upon reason as well as authority, that it is unnecessary for the state to prove that the producing the abortion toas not advised by two physicians further than such negative fact may be implied from the proof that it toas not necessary to preserve the life of the mother.”
Though not an essential part of the decision, the above is worthy of much consideration. Attention is also directed to decisions in other jurisdictions.
In State v. Aiken, 109 Iowa, 643, 80 N. W., 1073, an abortion case, it was stated that there was
“nothing to indicate the condition of her health, except that she walked to the office of the defendant two or three times. Surely this does not prove beyond a reasonable doubt that the miscarriage was not necessary to save the life of the mother. And we are of the opinion that it does not make out even a prima facie case. * * * Every presumption is in favor of defendant’s innocence; and if the facts shown are capable of explanation on any reasonable hypothesis in favor of innocence, there can be no rightful conviction.”
In State v. Clements, 15 Ore., 237, the court said:
“Proof that a physician, in his professional treatment of a woman pregnant with a child had used means, with the intent thereby to destroy the child, and the death of the child was thereby produced, is not evidence that the treatment was not necessary to preserve the life of the mother; * * The experience of mankind shows that cases have often arisen in *206 which such treatment has necessarily been resorted to, and in the absence of other proof, the law, in its benignity, would presume that it was performed in good faith, and for a legitimate purpose. ’ ’
State v. Wells, 35 Utah, 400, 136 Am. St., 1059, 100 Pac., 681, is an instructive decision in which it was held that the
1. State must prove that the miscarriage was not necessary to save the woman’s life. That
2. It is not enough in a .prosecution for abortion that circumstances are proved by the state from which an inference may be deduced to preserve the life of the woman, but they must be inconsistent with every other reasonable conclusion.
3. The performance of an abortion on a woman of ordinary good health and normal physical conditions is inconsistent with the conclusion that it was nécessary to preserve her life. But in such case the good health and physical conditions may not be presumed.
4. When circumstancial evidence is relied upon, the circumstances must themselves be proved and not presumed.
5. The corpus delicti must be proved beyond a reasonable doubt, by evidence other than the defendant’s confession.
6. 'To establish the crime of abortion, it is not enough for the state to prove that the woman was pregnant, and that the defendant performed an operation on her causing a miscarriage, but it must prove that the miscarriage was not necessary to save her life, and this can not be established by the defendant’s confession.
7. In a prosecution for abortion, proof of the defendant’s illicit intercourse with the woman, and that she was unmarried, is not sufficient to prove the negative allegation in the indictment that the miscarriage was not necessary to preserve her life.
This court, referring to Moody v. State, 17 O. S., 110, and the dictum therein expressed, stated:
“The observation made by the Ohio court, that the circumstances attending the procurement of the abortion tending to prove that.it was unnecessary to save the life of the woman, ordinarily can be shown quite as easily on the part of the state as by the defendant, and that rule as to the sufficiency of circum *207 stantial evidence, as stated in Cye., is strictly enforced where decisive, direct evidence is probably obtainable, but is not produced, is here pertinent and applicable.”
The court then refers to the fact that when the woman and the physician for the state were on the stand for the state they
‘ ‘ were not interrogated by it with respect to the health or physical condition of the woman, and the state failed to show by them, or by other evidence, that there was nothing in the condition of the woman to indicate any necessity for a procured miscarriage, it may be assumed that if the witnesses had been examined on such matters, the evidence elicited from them would have been against the state, or that the state overlooked the necessity of proving the negative of the statute, or else treated it as a matter of defense.”
Coming now to decide whether the evidence offered proves the negative, it may be conceded that it is not essential that the woman be advised or told that the abortion is necessary to save her life, nor that she be informed that two physicians had advised that the operation was necessary to save life. But the rule of circumstantial inference must rest upon the ordinary human deduction from facts and circumstances. The most natural human thing to do when an abortion is necessary to save life would be to inform the patient of the necessity of the operation, if she was in condition to receive such advice. A physician has no right to perform an operation without consent of the patient.
It is reasonable to infer from the failure of defendant to inform the girl that the operation was necessary to save her life, ’ and from her age and not being married, from the fact that her parents were not aware of her condition, from the fact that she was working up to the time of the operation, that the operation was unnecessary to save her life and that two physicians had not advised that it was necessary; that the abortion was not necessary to save life.
Though the only direct testimony on the two negative facts is that of the girl, who is an accomplice, all of the facts and circumstances tend strongly to corroborate her. It is said that *208 circumstantial evidence is often the most convincing because it is difficult to fabricate connected links of circumstances to preserve the semblance of truth. When facts and circumstances are inconsistent or irreconcilable with claims fabricated, then it is clear that artifice has been resorted to.
The dictum of Moody v. State, supra, has more appealing force in considering the facts and circumstances of this case than does the more stringent rule of the decisions from other jurisdictions referred to herein. While no evidence as to the health and physical-condition of Della Snelling was offered, still the natural and reasonable inferences are apparent and clear.
As to the evidence offered in support of the claim that defendant removed a catheter, we think that there is no basis or grounds for the court to interfere with the verdict. The court concurs in the verdict of the jury, which placed no credence in this claim.
The jury may consider physical conditions and possibilities or improbabilities and give the same such weight and effect n comparison with the vocal utterances of any witness, or anjr number of witnesses. It may consider the fact that witnesses may falsify, while physical situations and conditions may not. Hong v. Lumber Co., 144 Wis., 337, quoted Ohio Instructions to Jury, Section 1732.
The motion for new trial is therefore overruled.